ARTHUR B. MENDELSON, Plaintiff-Appellant and Cross-Appellee, v. BEN A. BORENSTEIN AND COMPANY, Defendant-Appellee and Cross-Appellant.

First District (1st Division)   No. 1—91—0645

Opinion filed December 14, 1992.

Katz, Randall & Weinberg, of Chicago (Jeffrey H. Bunn, of counsel), for appellant.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker and Timothy M. Kelly, of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Arthur B. Mendelson filed this suit to recover damages against defendant Ben A. Borenstein & Company based on defendant's alleged breach of the parties' construction contract. The circuit court of Cook County entered summary judgment against plaintiff and simultaneously denied plaintiff leave of court to file a third-amended complaint. Plaintiff filed a motion for reconsideration which the circuit court denied. Defendant thereafter filed a petition for sanctions against plaintiff pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). Defendant's petition was denied. Plaintiff appeals from the award of summary judgment and the court's refusal to permit

plaintiff to file a third-amended complaint. Defendant cross-appeals from the denial of his petition for sanctions. We affirm.

On March 20, 1989, plaintiff filed his initial breach of contract action against defendant relating to defendant's construction of a strip shopping center at the corner of Madison Street and Central Avenue in Chicago. After the grant of various motions to dismiss, plaintiff filed a second-amended complaint on November 3, 1989.

Plaintiff's second-amended complaint alleges that in 1982, the property in question was improved with a building which was destroyed by fire. After the fire, the debris from the destroyed building was dropped into the previous structure's basement. It is undisputed that both parties knew of the rubbled condition of the property.

On September 17, 1984, plaintiff entered an oral contract with defendant for the construction of a strip shopping center on the property. The parties thereafter drafted a written contract confirming the material terms of their oral agreement. The parties never signed the contract but have, according to plaintiff, governed themselves in accordance with its specifications and requirements.

Section 12.1.1 of the agreement defined a "Change Order" as "a written order to the Contractor signed by the Owner and the Architect, issued after execution of the Contract, authorizing a change in the Work or an adjustment in the Contract Sum or Contract Time." "Work" to be performed by the contractor was defined as "the completed construction required by the Contract Documents," which in turn consisted of, among other matters, the architect's plans and specifications.

The specific paragraphs of plaintiff's second-amended complaint relevant to this appeal are the following:

"6. At all times relevant ***, it was a material express term of the parties' contract, that [defendant] would use its best skill and judgment in following the plans and specifications drawn for the project, and would cooperate with the architect in furthering the interests of [plaintiff] throughout the course of completion of the project.

7. Notwithstanding [defendant's] express duties described above, [defendant] did materially breach such duties in unilaterally deviating from [the] Project['s] plans and specifications, as they pertained to footing and foundation excavation, without the approval of the architect as required under Paragraph *** of the General Conditions of the Contract.

8. More specifically, upon discovering the nature and extent of the poor soil conditions at the Project, [defendant] unilater-

ally abandoned the Project plans and specifications which ***
originally specified that footings would be set at a depth of one
foot, eight inches *** and instead, excavated a trench, refilled
it with recycled concrete and set the Project footings upon such
refilled trench.''

Discovery between the parties included the deposition of Sherwin
Braun, the project's architect, the affidavit of Alvin Frishman,
defendant's project manager, and documents identified by Braun and
Frishman. These materials formed the basis of defendant's summary
judgment motion.

Braun testified that he and defendant were familiar with one an-
other from other projects and that defendant introduced his firm to
plaintiff. Braun learned that plaintiff and defendant were also very fa-
miliar with one another.

Braun testified that his firm entered a contract with plaintiff for
Braun's firm to perform architectural services. These services in-
cluded developing specifications for the building, for which Braun
hired a structural engineering firm, creating contract documents for
construction, and observing the construction process, during which
Braun was to advise and consult with plaintiff and served as his rep-
resentative. Plaintiff never complained about the specifications as
originally drawn.

All parties knew of the rubbled condition of the property. Prior to
construction, the parties contemplated that the footings may have to
be changed because the extent of the rubble was unknown. The con-
struction plans were drawn with the footings at a standard four feet
below "zero zero." During the construction process, it became clear
to all parties that the footings could not be placed as specified in the
initial plans. A meeting was accordingly held at defendant's offices.
Plaintiff, Braun, defendant and a soil engineer attended the meeting.
The parties discussed various options, including removing the rubble,
compacting all the rubble, lowering the footings to virgin soil, and in-
stalling compacted fill where the footings were to be placed. All of
these options, however, were determined to be prohibitively expen-
sive.

The soil engineer recommended excavating a five-foot trench
down to virgin soil, filling it with recycled concrete, and placing the
footings on the concrete. Braun contacted his structural engineer,
who approved the solution. Braun considered this option to be the ap-
propriate solution and would have recommended another course of
action if he thought otherwise. Defendant proceeded with the place-
ment of the footings in accordance with the meeting.

Frishman's affidavit corroborates Braun's testimony in all material respects. All parties knew that the rubbled condition would have to be treated during the construction process. At the meeting held to address the problem, options were discussed, and one was selected: A five-foot-wide trench would be dug to virgin soil, with the trench being filled with recycled concrete. The footings would be placed on the concrete. Plaintiff, Braun and the structural engineer specifically approved this method.

On October 11, 1984, Frishman sent a letter to plaintiff confirming this agreement, and he sent a copy of the letter to the architect. Defendant then carried out the agreed solution. Plaintiff and his architect observed the work in progress. The architect issued a "Certificate of Substantial Completion" on January 16, 1986.

In response to defendant's motion, plaintiff submitted his own affidavit wherein he states that he was familiar with defendant from prior dealings and introduced to the architect by defendant. During the construction process, plaintiff learned from defendant that the foundations could not be set as originally specified in the written contract. Based on defendant's advice that a soil engineer would assist in deciding the best method of setting the foundations, plaintiff authorized defendant to obtain the services of a soil engineer.

In October 1984, a meeting was held between plaintiff, defendant and the soil engineer; the architect may not have been present. At the meeting, plaintiff was advised that the most cost effective way of dealing with the problem would be to excavate a trench and fill it with concrete. Plaintiff relied on this advice and had insufficient knowledge himself to know the propriety of the proposed solution. Plaintiff never sought the advice of his architect. As with the problem associated with the footings, plaintiff relied principally on defendant and not his architect when other problems arose.

At the October 24, 1990, hearing on defendant's summary judgment motion, defendant argued that plaintiff consented to any deviation from the contract's plans and specifications as well as the procedure for effecting such deviations. Thus, plaintiff's allegation that defendant "unilaterally" deviated or abandoned the specifications was without merit. Independently, defendant argued that *res judicata* barred plaintiff's action. On this matter, defendant argued that plaintiff's consent to a judgment in an action by defendant on a promissory note representing the unpaid contract price amounted to *res judicata* on the issue of defendant's performance.

The circuit court granted defendant's motion for summary judgment. The court found that no written contract existed and that plain-

tiff agreed to the manner in which defendant handled the rubbled condition. After the court orally indicated how it would rule, plaintiff orally moved for leave of court to file a third-amended complaint alleging defendant's failure to perform in a workmanlike manner. The court, although recognizing its discretion to allow the amendment, found no evidence to support plaintiff's position. Leave of court, therefore, was denied. Plaintiff never tendered an amended complaint to the court, and no such complaint is in the record.

On November 21, 1990, plaintiff filed a motion for reconsideration, which provided in its entirety:

> ## "MOTION FOR RECONSIDERATION
>
> Now comes the plaintiff *** and moves this Honorable Court to reconsider its Order of October 24, 1990, granting the defendant's motion for summary judgment and further, *moves this Honorable Court for leave to file a memorandum in support therefor, within fourteen (14) days of the hearing of the instant motion.*" (Emphasis added.)

On November 28, 1990, defendant objected to the jurisdiction of the court to hear plaintiff's motion. Defendant asserted that the motion did not qualify as a "post-trial" motion and, therefore, the court lost jurisdiction 30 days following the grant of summary judgment. On December 4, 1990, the court ordered that plaintiff be allowed to file a reply to defendant's objection. The matter was continued until January 11, 1991.

On January 11, 1991, the circuit court overruled defendant's objection to jurisdiction, set a hearing on plaintiff's motion to reconsider and ordered that no further briefs be filed. The transcript of this hearing is not in the record.

On February 5, 1991, the court denied plaintiff's motion for reconsideration. Plaintiff filed his notice of appeal on February 19, 1991.

On February 28, 1991, defendant filed a petition for sanctions under Supreme Court Rule 137 (134 Ill. 2d R. 137). Defendant based his petition on plaintiff's failure to investigate his claim that defendant's deviation from the written contract was "unilateral." Defendant contended that an investigation would have revealed to plaintiff that, contrary to his complaint, both he and his architect approved of defendant's deviation from the plans. The circuit court denied defendant's petition for fees on April 19, 1991. Defendant has pursued a cross-appeal from this denial.

Before addressing the merits of plaintiff's appeal, we must address defendant's argument that we lack appellate jurisdiction. In support of its argument, defendant contends that plaintiff's motion for reconsideration is, as a matter of law, fatally deficient under section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203). Defendant particularizes this deficiency by noting that the motion, while entitled "Motion for Reconsideration" and requesting such relief, fails to articulate any grounds to warrant the grant of such relief. Relying on *Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 549 N.E.2d 1262, and *Beck v. Stepp* (1991), 144 Ill. 2d 232, 579 N.E.2d 824, defendant argues that this defect denies "post-judgment" motion status to plaintiff's motion. Defendant accordingly contends that, as the motion did not extend the 30-day time limit in which to file a notice of appeal from a final judgment of the circuit court (see 134 Ill. 2d R. 303(a)), plaintiff's present appeal is untimely. We disagree.

Section 2—1203 of the Code of Civil Procedure governs post-judgment motions in nonjury cases:

"§2—1203. Motions after judgment in non-jury cases (a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment ***, file a motion for a rehearing, or a retrial, or modification of the judgment, or to vacate the judgment or for other relief.

(b) A motion filed in apt time stays enforcement of the judgment." Ill. Rev. Stat. 1989, ch. 110, par. 2—1203(a).

Rule 303(a) governs when the notice of appeal must be filed:

"(1) Except as [not relevant here], the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-trial motion." 134 Ill. 2d R. 303(a)(1).

*Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 549 N.E.2d 1262, and *Beck v. Stepp* (1991), 144 Ill. 2d 232, 579 N.E.2d 824, are the two most recent supreme court opinions interpreting what constitutes a post-judgment motion for purposes of section 2—1203 and Rule 303(a)(1). In *Andersen*, plaintiff's second-amended complaint was dismissed on March 28, 1985. On April 26, 1985, plaintiff filed in the circuit court a notice of appeal seeking reversal of the circuit court's order of dismissal and reinstatement of his second-amended complaint. Later that same day, plaintiff filed a motion for

leave to file a third-amended complaint. In his motion, plaintiff stated his intention to plead "further allegations, new and distinct from the prior allegations," which would "state a theory substantively different from the prior allegations" and "cure any defect in the Second Amended Complaint." The motion alleged that the facts underlying the "new and distinct" allegations were previously "unknown to plaintiff's attorney." *Andersen*, 133 Ill. 2d at 344, 549 N.E.2d at 1263.

Plaintiff subsequently moved to dismiss his appeal, claiming that his motion was "in the nature of a post-trial motion." The circuit court granted dismissal of the appeal on July 23, 1985. On October 8, 1985, the circuit court denied plaintiff's motion. On November 6, 1985, plaintiff appealed the circuit court's March 28 and October 8 orders to the appellate court. *Andersen*, 133 Ill. 2d at 344, 549 N.E.2d at 1263-64.

On appeal, the appellate court addressed whether plaintiff's motion to file a third-amended complaint could be considered a valid post-trial motion. The appellate court ruled that it was and that plaintiff's motion tolled the time in which he was required to file a notice of appeal under Rule 303(a)(1). *Andersen*, 133 Ill. 2d at 344, 549 N.E.2d at 1264.

The supreme court on review vacated the judgment of the appellate court, holding that plaintiff's motion for leave to amend was not a valid post-judgment motion. To support its holding, the court reasoned:

> "In *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 135-36, this court held a motion for leave to amend a complaint, after dismissal with prejudice, does not extend the time for appeal or the time for filing other motions [citation], because such a motion is not 'directed against the judgment' within the meaning of Rule 303(a)(1), nor is it encompassed within the relief provided for by section 68.3(1) of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 68.3(1) (now Ill. Rev. Stat. 1987, ch. 110, par. 2—1203(a))), which specifies rehearing, retrial, modification or vacation of judgment, or 'other relief.' *Fultz*, 49 Ill. 2d at 135-36.
>
> The purpose of a post-judgment motion is, after all, to allow the circuit court to review its decisions and, to that end, specificity is required. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 349-50.) Plaintiff's motion neither requests modification or vacation of the judgment, nor offers *any* points warranting such. Hence, it is not a valid post-judgment motion.
>
> Even if we were to disregard *Fultz*, which appears to be controlling authority, our examination of plaintiff's motion re-

veals that it is nothing more than a title and an ambiguous prayer for relief with absolutely no substance in between. To call such a document a 'post-judgment motion' would be to blindly adhere to nomenclature at the expense of reality. This we refuse to do." (Emphasis in original.) *Andersen*, 133 Ill. 2d at 347, 549 N.E.2d at 1264-65.

In *Beck v. Stepp* (1991), 144 Ill. 2d 232, 579 N.E.2d 824, plaintiff filed a personal injury action arising from an automobile accident against Stepp and Bob Brockland Pontiac GMC, Inc. Brockland filed for summary judgment, which the circuit court granted on April 6, 1988. On April 15, the court received a letter from plaintiff's counsel:

> "On Wednesday, April 6, the Court held a conference call with counsel for the parties pertaining to Brockland's Motion for Summary Judgment. I understood the Court to announce that it was denying the Motion, but the Order states that the Motion was allowed.
>
> Thank you for your attention to this matter."

Counsel sent a copy of the letter to both defense attorneys. *Beck*, 144 Ill. 2d at 236, 579 N.E.2d at 826.

On June 2, 1988, Brockland filed a special and limited appearance contesting the circuit court's jurisdiction over it and asking the court to decline to take any further action with respect to plaintiff's claim. The court subsequently entered a *nunc pro tunc* order amending the April 6 order to reflect that summary judgment was denied, not allowed. *Beck*, 144 Ill. 2d at 236-37, 579 N.E.2d at 826.

Brockland appealed, and the appellate court dismissed the appeal. On further review, the supreme court addressed the issue of whether plaintiff's April 14 letter was in substance a post-judgment motion which permitted the court to alter its April 6 order granting Brockland summary judgment. In holding the letter did not so qualify, the court stated the requirements of a section 2—1203 post-judgment motion as follows:

> "A post-judgment motion must include a request for at least one of the forms of relief specified in section 2—1203. [Citations.] In addition, a post-judgment motion must allege grounds that would warrant the granting of the relief requested. (*Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 347.) Finally, a post-judgment motion must be filed with the clerk of the court, and copies of the motion must be served upon all parties. (134 Ill. 2d R. 104(b).)" *Beck*, 144 Ill. 2d at 240, 579 N.E.2d at 828.

Despite the absence of language in section 2—1203 requiring specificity in post-judgment motions filed thereunder, *Andersen* and *Beck* have clearly grafted such a requirement onto section 2—1203. We are without authority to deviate from the court's pronouncements. Nevertheless, we distinguish *Andersen* and *Beck* from the instant case. *Andersen* and *Beck* were faced with documents which could not reasonably be deemed post-judgment motions. In *Andersen,* the document in question was a motion for leave to file an amended complaint, while in *Beck* it was a personal letter to the court. Neither document requested the types of relief contemplated by either Rule 303(a)(1) or section 2—1203. Consequently, neither document could advance a ground to support relief which was not requested.

■ In this case, plaintiff's motion for reconsideration was entitled "motion for reconsideration" and requested such relief. Thus, plaintiff's motion was the specie of document contemplated by Rule 303(a)(1) and section 2—1203.

More importantly, plaintiff's motion requested leave of court to file a supporting memorandum within 14 days of the hearing of the motion. While we know of no reason why plaintiff could not have included his grounds within the motion itself, we believe plaintiff satisfied *Andersen's* and *Beck's* requirement that specific grounds be alleged in post-judgment motions filed under section 2—1203. Plaintiff directly requested leave of court to supply such grounds. Yet, subsequent to plaintiff's motion, the parties focused on the court's jurisdiction to hear plaintiff's motion, not the merits of the motion. This was in response to defendant's motion challenging such jurisdiction. When defendant's challenge came up for hearing on January 11, 1991, the court overruled defendant's objection, set a hearing date on the motion to reconsider and ordered that no further briefs be filed. The transcript of this hearing is not in the record. Thus, we do not know whether plaintiff then informed the court of the grounds supporting his motion. Plaintiff's motion for rehearing was subsequently denied.

We believe the above record serves to distinguish this case from *Andersen* and *Beck* on the matter of specificity. A substantial reason for the court in those cases to find the lack of a valid post-judgment motion was the moving party's failure to include any specificity in their respective "motions." Here, plaintiff's motion requested leave of court to supply such grounds. Subsequently, the court ordered that no further briefs be filed. When plaintiff's motion came up on the merits, relief was denied. Upon this record, we believe plaintiff satisfied the specificity requirement of *Andersen* and *Beck.* We accordingly find that plaintiff's motion for rehearing constituted a valid post-judgment

motion, thereby tolling the time in which his notice of appeal was required to be filed under Rule 303(a)(1). Having found jurisdiction, we turn now to plaintiff's argument that summary judgment was erroneously entered.

Summary judgment shall be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) While the use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.

In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. (*Purtill,* 111 Ill. 2d at 240, 489 N.E.2d at 871.) Reviewing courts apply a *de novo* standard of review when determining the propriety of summary judgment. *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 585 N.E.2d 1164; *Briggs Manufacturing Co. v. Industrial Comm'n* (1989), 212 Ill. App. 3d 318, 570 N.E.2d 1152; *Demos v. National Bank of Greece* (1991), 209 Ill. App. 3d 655, 567 N.E.2d 1083; *General Motors Corp. v. Douglass* (1990), 206 Ill. App. 3d 881, 565 N.E.2d 93.

Plaintiff raises three arguments on appeal to advance his claim that summary judgment was improperly granted. First, while no party ever executed the written construction contract, the circuit court erred in finding that defendant was not bound by its terms where such contract reflects the parties' oral agreement. Second, defendant failed to comply with the written contract's technical requirements regarding performance and deviations therefrom. Third, a genuine issue of material fact exists on whether plaintiff and the architect "approved defendant's disputed extracontractual undertakings."

■ On appeal, plaintiff makes much of the parties' alleged written contract. We assume for purposes of this appeal that the parties conformed their conduct to the written contract. We believe, however, this is of no aid to plaintiff.

It has long been Illinois law that strict adherence to a contract's technical requirements may be waived. (*E.g., Chicago & Eastern Illinois R.R. Co. v. Moran* (1900), 187 Ill. 316, 58 N.E. 355.) With regard

to waiver, we stated in *Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343, 519 N.E.2d 991, 994, the following:

> "Parties to a contract have the power to waive provisions placed in the contract for their benefit and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required. [Citation.] An implied waiver of a legal right may arise when conduct of the person against whom waiver is asserted is inconsistent with any other intention than to waive it. [Citation.]
>
> Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right. [Citation.] The determination as to what facts are sufficient to constitute waiver is a question of law. [Citation.] An analysis of whether there was in fact a waiver of contractual provisions focuses on the intent of the nonbreaching party. If he has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement."

In this case, the facts are undisputed that the rubbled condition of the property was a known fact by both parties. Rather than address the problem initially, the parties agreed to address it later in the project when the true extent of the problem was discovered. A meeting was subsequently held to address the problem, and a solution was chosen. Defendant implemented the solution, and plaintiff and his architect watched as defendant worked. Upon completion of the project, plaintiff's architect issued a certificate of substantial completion.

We believe the above facts preclude plaintiff from now claiming that the changes required by the property's rubbled condition must have been in writing. Clearly, if plaintiff wished for the contract's technical requirements to have been met, it was incumbent upon plaintiff to demand them prior to defendant's commencement of the foundation work. Failing defendant's compliance with such demand, plaintiff could stop the project. Plaintiff's failure to undertake such conduct constitutes a waiver of the contract's formal requirements. See also *Delta Construction, Inc. v. Dressler* (1978), 64 Ill. App. 3d 867, 381 N.E.2d 1023; *Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1977), 48 Ill. App. 3d 73, 365 N.E.2d 360; *W.H. Stubbings Co. v. World's Columbian Exposition Co.* (1903), 110 Ill. App. 210.

We next address plaintiff's argument that a triable issue exists as to whether he and his architect approved defendant's handling of the excavation problem. We find plaintiff's argument unpersuasive.

Plaintiff's architect testified in his deposition that he attended the meeting at which options were discussed relative to handling the rubbled condition of the property. Plaintiff also attended. While plaintiff asserts in his affidavit that his architect did not attend, he qualifies this assertion by stating that such nonattendance was only "to the best of his recollection." In any event, defendant sent a letter to plaintiff and his architect dated October 11, 1984, which memorialized the agreement. Plaintiff's architect testified that if a better solution existed to treat the rubbled condition, he would have recommended it.

▮ The undisputed facts show that plaintiff and his architect approved defendant's handling of the rubbled condition of the property. While plaintiff states in his affidavit that he relied on defendant to make the decision in question and that he has no expertise in such areas, plaintiff and his architect nevertheless allowed defendant to proceed with construction. Again, had plaintiff sought technical compliance with the contract, he should have asked. We do not believe plaintiff can recover damages against defendant where defendant did exactly what plaintiff and his architect approved him to do.

For the above reasons, summary judgment in favor of defendant was proper. Given the result we reach on this issue, we decline to address defendant's *res judicata* argument.

We next address plaintiff's argument that the circuit court erred in denying him leave of court to file a third-amended complaint. After the court orally indicated it would grant summary judgment to defendant, plaintiff orally moved to amend his complaint to assert that defendant failed to perform the excavation work in a workmanlike manner. In denying plaintiff leave to amend, the court recognized that it had authority to permit the amendment pursuant to section 2—1005(g) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g)), but because no testimony supported plaintiff's new theory, it would decline plaintiff's request. When plaintiff moved for reconsideration, he limited his motion to the court's grant of summary judgment. The denial of leave to amend was not addressed. The hearing on plaintiff's motion for reconsideration was similarly limited to the summary judgment grant. Plaintiff at no time ever submitted a third-amended complaint to the circuit court, and no such complaint is in the record.

Regardless of whether we treat plaintiff's attempt to amend as brought pursuant to section 2—616(a) of the Code of Civil Procedure, which permits amendments "[a]t any time before final judgment *** on just and reasonable terms" (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(a)), or under section 2—1005(g), which permits amendments "[b]e-

fore or after the entry of a summary judgment \*\*\* upon just and reasonable terms" (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g)), our inquiry is the same: whether the circuit court abused its discretion in denying leave to amend. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211.) This determination requires us to evaluate the following four factors established to address this issue in *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774, and adopted by our supreme court (see *Loyola Academy*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16): (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified.

▪ Under the first element, plaintiff's failure to tender his third-amended complaint or include it in the appellate record significantly diminishes our ability to determine whether the proposed amendment would provide plaintiff with a viable theory against defendant. Indeed, as defendant argues, plaintiff's omissions constitute a waiver in this court of plaintiff's right to have the denial of leave to amend reviewed. (*Enblom v. Milwaukee Golf Development* (1992), 227 Ill. App. 3d 623, 592 N.E.2d 190.) Aside from waiver, on appeal, plaintiff alleges that, "since the defendant's work was completed, the plaintiff has suffered ongoing, unnatural settlement and subsidence problems in certain areas of his shopping center." From this fact, plaintiff asserts that a fair inference exists that defendant failed to perform its contractual obligations in a workmanlike manner.

We will not speculate as to whether defendant satisfactorily performed its contractual obligations. It was incumbent upon plaintiff to file with the circuit court the amended complaint containing facts supporting his new theory of recovery. The mere fact of subsidence is neutral in this case in light of the rubbled condition of the property when the construction began. Without supporting facts, plaintiff's theory of recovery is nothing more than that, a theory. Plaintiff has accordingly failed to show that an amendment to the pleadings would cure the defect in his case. See *Regas v. Associated Radiologists, Ltd.* (1992), 230 Ill. App. 3d 959, 595 N.E.2d 1223; *In re Estate of Hopkins* (1991), 214 Ill. App. 3d 427, 574 N.E.2d 230; *Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, 550 N.E.2d 665 (all refusing to allow amendment where it would not cure pleading defect).

We consider the second and third elements together. Plaintiff commenced this action on March 20, 1989. Plaintiff filed an initial complaint and two amended complaints. None of these complaints pursued a misperformance theory; however, plaintiff did assert a negligence theory which was subsequently dismissed. Discovery then ensued, including the deposition of plaintiff's architect. Following this deposition, defendant wrote plaintiff seeking to obtain a voluntary dismissal based on the architect's testimony. Plaintiff declined and filed no amended complaint. On October 24, 1990, the court awarded summary judgment to defendant, some 18 months after this action was initiated.

■ It is clear that plaintiff had ample opportunity to change theories, yet chose otherwise. Defendant undertook discovery and defended against plaintiff's action under one theory. To now allow plaintiff to haul defendant into court again under a different theory would prejudice defendant. This case is beyond the pleading stages. We distinguish on this ground the cases which have permitted amendment under section 2—1005(g) because the amendment was sought in the pleading stages. See *Loyola Academy*, 146 Ill. 2d 263, 586 N.E.2d 1211; *Giacalone v. Chicago Park District* (1992), 231 Ill. App. 3d 639, 596 N.E.2d 731; *Evans v. United Bank* (1992), 226 Ill. App. 3d 526, 589 N.E.2d 933.

Regarding timing, while 17 months from when a suit is filed has been held to be a reasonable time in which to seek an amendment (*Loyola Academy*, 146 Ill. 2d 263, 586 N.E.2d 1211), and while plaintiff's proposed amendment here occurred at 18 months, it again must be noted that this case is beyond the pleading stages. Also, plaintiff has offered no explanation for his failure to include a claim for misperformance. Plaintiff's failure is particularly significant here because the subsidence problems are not latent. When plaintiff's negligence count was dismissed previously, plaintiff could have easily amended his complaint to pursue a contract theory alleging unworkmanlike performance. Plaintiff did not do so.

■ The final element is whether plaintiff ever attempted his amendment previously. As noted, plaintiff has already amended his complaint twice before. Thus, he has had opportunity to add the proposed amendment. (Compare *Loyola Academy*, 146 Ill. 2d 263, 586 N.E.2d 1211; *Giacalone*, 231 Ill. App. 3d 639, 596 N.E.2d 731; *Evans*, 226 Ill. App. 3d 526, 589 N.E.2d 933 (proposed amendment was first real opportunity to amend), with *Regas*, 230 Ill. App. 3d 959, 595 N.E.2d 1223 (plaintiff had amended two times before).) For these reasons, we affirm the circuit court's denial of plaintiff's motion to amend his complaint.

■ Regarding defendant's cross-appeal, we affirm the denial of sanctions. Plaintiff's theory of recovery was defective from the start. All

the parties knew of the rubbled condition of the property and delayed addressing the foundational problems caused thereby until a clearer picture of the problem existed. When that time came, a meeting was held at which the owner was presented with various alternatives. The one selected and approved by the owner allowed the project to proceed without excessive cost or delay.

On appeal, plaintiff asserts that his approval was not a knowing approval; he lacked construction expertise. Thus, he relied on defendant's expertise and recommendations in approving the foundation work. Plaintiff's theory of recovery in this case posits that the traditional roles of an architect, owner and general contractor in the typical construction setting were eroded. Plaintiff theorizes that while normally, a general contractor will not be liable for properly performing the contract in accordance with the architect's specifications, the contractor is liable where it assumes the role of both architect and contractor. Where following such an assumption of duty construction defects occur, the contractor is liable for such defects even where the contractor performs in a workmanlike manner.

Our review of plaintiff's briefs reveals no authority to support his theory or recovery. Even the facts weigh heavily against plaintiff. The undisputed record shows approval of defendant's conduct by both plaintiff and his architect. While plaintiff asserts such approvals were not informed, they occurred nonetheless.

Notwithstanding the above discussion, we must affirm the denial of sanctions. The circuit court was presented with plaintiff's theory and the facts he marshalled to support it. The court exercised its discretion in denying sanctions, and we defer to its ruling. This case was not brought in bad faith as plaintiff apparently has suffered and will continue to suffer unnatural settling. A cause of action may have existed against someone; however, it is not against defendant under the theory presented. We defer to the circuit court's determination that sanctions are unwarranted in this case.

For the foregoing reasons, the judgments of the circuit court of Cook County granting summary judgment and denying sanctions are affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.