NO. 4-07-0472          Filed 1/9/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ILLINOIS NON-PROFIT RISK MANAGEMENT ASSOCIATION, | ) ) | Appeal from Circuit Court of |
|        Plaintiff, | ) | Sangamon County |
|        v. | ) | Nos. 03L34 |
| HUMAN SERVICE CENTER OF SOUTHERN | ) |      03L35 |
| METRO-EAST, TRADE INDUSTRIES, CAREER | ) |      03L75 |
| DEVELOPMENT CENTER, FIVE STAR | ) |      03LM341 |
| INDUSTRIES, and LAWRENCE CRAWFORD | ) |      03LM511 |
| ASSOCIATION FOR EXCEPTIONAL CITIZENS, | ) |      05LM1345 |
|        Defendants and Third-Party | ) | |
|        Plaintiffs-Appellants, | ) | |
|        v. | ) | |
| RISK MANAGEMENT ADMINISTRATORS, INC., | ) | |
| STANLEY W. MURRAY, DAVID STOVER, | ) | |
| KENNETH BEST, GREG SHAVER, THOM | ) | |
| POLLOCK, DAVID BAKER, ARLAN McCLAIN, | ) | |
| and JO McVEY, | ) | Honorable |
|        Third-Party Defendants- | ) | Leslie J. Graves, |
|        Appellees. | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

Defendants and third-party plaintiffs (pool members), Human Service Center of Southern Metro-East, Trade Industries, Career Development Center, Five Star Industries, and Lawrence Crawford Association for Exceptional Citizens (Lawrence Crawford) appeal from the dismissal with prejudice and without leave to amend their third-party complaint concerning a workers' compensation self-insurance pool against third-party defendants, Risk Management Administrators, Inc. (RMA); Stanley W. Murray; David Stover; Kenneth Best; Greg Shaver; Thom Pollock; David Baker; Arlan McClain; and Jo McVey.

On appeal, the pool members argue the trial court erred

in dismissing their claims against third-party defendants.  We affirm.

## I. BACKGROUND

Plaintiff, Illinois Non-Profit Risk Management Association (INRMA), is a group workers' compensation self-insurance pool organized under the Illinois Insurance Code (Insurance Code) (215 ILCS 5/107a.04 (West 2002)).  The pool members are five former insureds of the pool.  RMA is the pool's administrator.  Murray was the president of RMA.  Stover, Best, Shaver, McClain, McVey, Pollock, and Baker were directors and trustees (trustees) of INRMA.

The pool members are not-for-profit agencies providing rehabilitation services to Illinois residents with physical and mental disabilities.  At various times, pool members entered into pooling agreements with INRMA that provided the pool members with workers' compensation insurance coverage.  The pooling agreements provided each pool member shall make annual contributions or premiums to the pool.  Annual contributions were determined by using standard Insurance Code rates and each member's experience-modification factor.  A deposit in the amount of 25% of the estimated annual contribution was due at the beginning of each pool year.  Along with the annual contributions, pool members were subject to assessments, as necessary, for additional contri-butions on a pro rata basis of annual contributions.  Assessments were levied when the loss experience exceeded the total net premiums collected.  The pooling agreement provided members were

- 2 -

liable for these year-end assessments for a three-year period regardless of whether they renewed their membership in the pool for the following year.

In February and March 2003, INRMA filed separate complaints against these five pool members for failure to pay the year-end assessments in breach of the parties' pooling agreements. Each pool member filed answers and counterclaims against INRMA and brought third-party actions against Murray, RMA, and the trustees. The cases were eventually consolidated.

In January 2005, the pool members, excluding Lawrence Crawford, filed a second-amended third-party complaint against Murray, RMA, and the trustees. Lawrence Crawford filed its third-party complaint in February 2005. The complaints set forth claims of breach of fiduciary duty (RMA and Murray) (count I), fraud (RMA and Murray) (count II), negligent misrepresentation (RMA and Murray) (count III), civil conspiracy (RMA and Murray) (count IV), breach of contract (RMA) (count V), and breach of fiduciary duty (trustees) (count VI). Count III was voluntarily withdrawn.

The third-party complaints alleged the pool members paid all annual contributions required under the pooling agreement. By 1999, the pool had developed a deficit and INRMA levied a $2 million assessment against the pool members. At that time, RMA, Murray, and the trustees allegedly represented to pool members that INRMA did not have a cash-flow problem, and the $2 million was not to pay operating expenses or claims losses but

would be set aside with interest being returned to the pool.  The dispute arose when INRMA levied three "extraordinary assessments," including $2 million in 2001, $3 million in 2002, and an additional $3.6 million dissolution assessment in 2002.  The pool members refused to pay the additional assessments.  INRMA ceased writing workers' compensation coverage in April 2002.  The pool members alleged Murray, Stover, and others engaged in a scheme to deceive INRMA members about the true performance of the pool by manipulating INRMA's finances and making public statements about INRMA's financial performance that were false and misleading.

The third-party complaints alleged INRMA made payments of $161,740 in 1996 and $102,728 in 1997 to Risk Management Solutions, Inc. (RMS), despite Murray's letter to the Illinois Department of Insurance that RMS did not have operational employees or staff and did not perform services for INRMA during 1996 and 1997.  The pool members also alleged INRMA paid $59,836 to FIRM, Inc., for promotional and newsletter services.  The newsletters allegedly encouraged brokers of the pool to divert "good risk" existing and potential pool members from INRMA to a workers' compensation insurance entity controlled by Murray.  The pool members alleged RMA, Murray, and the trustees participated in and approved the diversion of "good risk" members from the pool.

The third-party complaints alleged RMA owed a fiduciary duty to the pool members and breached that duty by, inter alia, misrepresenting the financial condition of the pool to pool

- 4 -

members.  In the civil-conspiracy count, the pool members alleged RMA contracted with Ernst & Young to provide accounting services for INRMA.  RMA and Murray then allegedly conspired with Ernst & Young to prepare inaccurate, untruthful, and deceptive reports for the purpose of misrepresenting the true financial condition of the pool.  The pool members alleged they suffered damage in excess of $260,000, collectively, based on extraordinary and unwarranted assessments.

In January 2006, the trustees filed a motion to dismiss count VI of the second-amended third-party complaint pursuant to section 2-615 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-615 (West 2006)).  The trustees argued the pool members could not maintain an action against them for breach of fiduciary duty, and even if they could, the complaint failed to allege facts sufficient to establish a fiduciary relationship.

RMA and Murray also filed a motion to dismiss counts I, II, IV, and V pursuant to section 2-619.1 of the Procedure Code (735 ILCS 5/2-619.1 (West 2006)).  RMA and Murray argued the pool members' claim for breach of fiduciary duty in count I was barred by the doctrines of res judicata and collateral estoppel based on this court's decision in Illinois Non Profit Risk Management Ass'n v. Support Systems & Services, Inc., No. 4-05-0161 (October 21, 2005) (unpublished order under Supreme Court Rule 23) (here- inafter SSS).  Count II's allegation of fraud was subject to dismissal because it was not pled with sufficient particularity and specificity.  Further, counts IV and V failed to state a

cause of action.

In May 2007, the trial court dismissed counts I, II, IV, and V against RMA and Murray with prejudice and without leave to amend. The court also dismissed count VI against the trustees with prejudice and without leave to amend. The court entered a finding that no just reason existed for delaying enforcement or appeal. See 210 Ill. 2d R. 304(a). This appeal followed.

## II. ANALYSIS

### A. Standard of Review

In the case sub judice, the trustees filed a motion to dismiss under section 2-615, while RMA and Murray filed a motion to dismiss under section 2-619.1. A motion to dismiss under section 2-615 of the Procedure Code challenges only the legal sufficiency of the complaint. Russell v. Blagojevich, 367 Ill. App. 3d 530, 532, 853 N.E.2d 920, 923 (2006). A motion under section 2-619.1 allows a party to "combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." Edelman, Combs & Latturner v. Hinshaw & Culbertson, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747 (2003). When reviewing a dismissal pursuant to sections 2-615 and 2-619 of the Procedure Code (735 ILCS 5/2-615, 2-619 (West 2006)), we accept all well-pleaded facts as true and make all reasonable inferences therefrom. Zahl v. Krupa, 365 Ill. App. 3d 653, 658, 850 N.E.2d 304, 309 (2006). We review an order granting a motion to dismiss pursuant to section 2-615 or 2-619

- 6 -

de novo.  Edelman, 338 Ill. App. 3d at 164, 788 N.E.2d at 747-48.

B. Breach of Fiduciary Duty (RMA and Murray)

In dismissing the pool members' third-party complaint, the trial court did not specify the theories relied upon for dismissal.  The pool members argue the court erred in dismissing their claim for breach of fiduciary duty against RMA and Murray (count I) pursuant to sections 2-619(a)(4) and 2-615 of the Procedure Code because the claim was not barred by res judicata or collateral estoppel or by section 2-2201(b) of the Procedure Code (735 ILCS 5/2-2201(b) (West 2006)).  We disagree.

Section 2-619(a)(4) of the Procedure Code (735 ILCS 5/2-619(a)(4) (West 2006)) allows a trial court to dismiss a cause of action on the grounds it is "barred by a prior judgment."  This section incorporates the doctrine of res judicata and collateral estoppel.  Yorulmazoglu v. Lake Forest Hospital, 359 Ill. App. 3d 554, 558, 834 N.E.2d 468, 471 (2005).

> "Under the doctrine of res judicata, a final
> judgment on the merits rendered by a court of
> competent jurisdiction acts as a bar to a
> subsequent suit between the parties involving
> the same cause of action.  [Citations.]  The
> bar extends to what was actually decided in
> the first action, as well as those matters
> that could have been decided in that suit.
> [Citation.]  For the doctrine of res judicata
> to apply, the following three requirements

- 7 -

must be satisfied:  (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." River Park, Inc. v. City of Highland Park, 184 Ill. 2d 290, 302, 703 N.E.2d 883, 889 (1998).

"Res judicata promotes judicial economy by preventing repetitive litigation and also protects parties from being forced to bear the unjust burden of relitigating essentially the same case." Arvia v. Madigan, 209 Ill. 2d 520, 533, 809 N.E.2d 88, 97 (2004).

Here, the pool members do not dispute that a final judgment on the merits had been rendered in SSS.  Instead, they argue both cases involved distinct causes of action and no identity of parties or their privies existed between them and the third-party plaintiff in SSS.  In that case, the third-party plaintiff, Support Systems & Services, Inc. (Support Systems), was a member of the same pool as in the present case.  In November 2002, INRMA filed a complaint against Support Systems for failure to pay its year-end assessments in breach of the pooling agreement.  Support Systems filed an amended third-party complaint against RMA alleging breach of contract, breach of fiduciary duty, and constructive fraud based on RMA's representations that it was on sound financial footing and the assessments would put the program back in good shape.  This court found, inter alia, no authority to establish the existence of a fiduciary

- 8 -

relationship between Support Systems and RMA.  This court found, in part, as follows:

> "There is no fiduciary relationship between an insurer and its insured.  If there is no fiduciary relationship between INRMA and [Support Systems], INRMA (the principal) owes no fiduciary duty to [Support Systems], its insured.  Therefore, RMA, as INRMA's agent, owes no fiduciary duty to [Support Systems] either."  SSS, slip order at 18.

In determining the identity of causes of action, our supreme court has adopted the transactional test.  River Park, 184 Ill. 2d at 311, 703 N.E.2d at 893.  Under that test, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."  River Park, 184 Ill. 2d at 311, 703 N.E.2d at 893.  Moreover, "the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction."  River Park, 184 Ill. 2d at 311, 703 N.E.2d at 893.

Here, the pool members' claims arise from the same group of operative facts as in SSS.  In a motion to consolidate and transfer, the pool members stated the SSS case "arose from the same acts and events" as the present consolidated cases.

- 9 -

Thus, the pool members' cause of action here was the same as set forth in SSS, even though different theories of relief have been asserted.

The pool members, however, maintain they were not in privity with the third-party plaintiff in SSS, thereby precluding the application of res judicata. "Privity exists between two parties who adequately represent the same legal interests." Marvel of Illinois, Inc. v. Marvel Contaminant Control Industries, Inc., 318 Ill. App. 3d 856, 864, 744 N.E.2d 312, 319 (2001). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." People ex rel. Burris v. Progressive Land Developers, Inc., 151 Ill. 2d 285, 296, 602 N.E.2d 820, 826 (1992). "A nonparty may be bound under privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty." City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n of Illinois, 362 Ill. App. 3d 556, 563, 840 N.E.2d 1283, 1289 (2005). However, "where a party has no standing to bring a cause of action on behalf of another party, either individually or derivatively, it also must be said to lack privity with the other party because it cannot adequately represent the other party's legal interests." Mount Mansfield Insurance Group, Inc. v. American International Group, Inc., 372 Ill. App. 3d 388, 394, 865 N.E.2d 524, 530 (2007).

In this case, we find the pool members were in privity with the third-party plaintiff in SSS as members of the same

- 10 -

workers' compensation pool.  RMA was the pool administrator and Murray its president and chief executive officer.  Support Systems and the pool members signed identical pooling agreements stating they were made and entered into by and among the trustees and members of INRMA.  Both cases arose out of the same assessments levied by INRMA against its pool members in 2001 and 2002, which all members shared on a pro rata basis.

The interests of all the pool members are identical because any amounts levied against one pool member necessarily affect the amounts other members are required to pay.  Allowing the pool members to repeatedly litigate this fiduciary-duty claim would not promote the interests of judicial economy.  Further, repetitive litigation runs the risk of inconsistent judgments.  Accordingly, the pool members' claim against RMA and Murray for breach of fiduciary duty is barred by res judicata.

Even if count I is not barred by res judicata, the pool members cannot show a fiduciary relationship exists between them and RMA and Murray.  The pool members claim that the pooling agreements show the pool members "expressly appointed RMA as their agent."  However, RMA was not a party to the pooling agreements.  Further, the pooling agreements only state RMA is an agent for the pool members for the purpose of filing reports, making or arranging for payment of claims, medical expenses, and all other things required or necessary, "insofar as they affect the [m]ember's liability under the Illinois Workers' Compensation or Occupational Diseases Act."  The pool members have not alleged

- 11 -

any failure of RMA to submit workers' compensation claims to INRMA, a failure to pay claims, or any refusal to defend.  The pool-administrator agreement, on the other hand, states RMA acted as INRMA's exclusive agent to conduct the pool's business and act in INRMA's best interest with an "undivided duty of loyalty."  Accordingly, the pool members cannot establish a claim for breach of fiduciary duty.

### C. Fraud

The pool members argue the trial court erred in dismissing their fraud claim against RMA and Murray (count II) pursuant to sections 2-619(a)(9) and 2-615 of the Procedure Code (735 ILCS 5/2-615, 2-619(a)(9) (West 2006)) because the complaint alleged sufficient facts to establish the claim and Murray's affidavit did not negate the claim.  We disagree.

To state a cause of action for common-law fraud, a plaintiff must set forth the following elements:  "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement."  Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996).

A claim of fraud "must be pleaded with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer."  Hirsch v. Feuer, 299 Ill. App. 3d 1076, 1085, 702 N.E.2d 265, 272 (1998).  "Thus, a

plaintiff must at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations[,] and to whom they were made." Board of Education of City of Chicago v. A, C & S, Inc., 131 Ill. 2d 428, 457, 546 N.E.2d 580, 594 (1989).

In count II, the pool members alleged RMA and Murray engaged in an extensive fraudulent scheme to deceive INRMA members as to the true performance and financial condition of the pool. The scheme was allegedly conducted for the purpose of continuing operation of the pool so RMA, Murray, Stove, and others could siphon money from the pool for their own use.

In claiming fraudulent concealment, the pool members also alleged RMA had a duty to reveal material facts regarding the financial management and condition of INRMA based on a fiduciary relationship to pool members. RMA and Murray allegedly concealed these material facts, which they knew presented a false picture of INRMA's financial condition, with the intent to deceive the pool members and induce them to renew their membership in the pool. The pool members alleged they acted in justifiable reliance on the facts as they knew them and suffered damages.

"In order to prove fraud by intentional concealment of a material fact, the plaintiff must show the existence of a special or fiduciary relationship with the defendant that would give rise to a duty to speak." Lewis v. Lead Industries Ass'n,

342 Ill. App. 3d 95, 105, 793 N.E.2d 869, 876 (2003); see also Magna Bank of Madison County v. Jameson, 237 Ill. App. 3d 614, 618, 604 N.E.2d 541, 544 (1992) (no duty to speak exists "absent a fiduciary or other legal relationship between the parties"). In absence of a fiduciary relationship here, RMA and Murray had no duty to speak. Thus, the pool members' fraud claim based on the fraudulent concealment of a material fact fails.

In claiming fraudulent inducement, the pool members alleged RMA and Murray explained the $2 million assessment by stating INRMA did not have a cash-flow problem and the amount would be set aside with interest being returned to the program. The pool members alleged RMA and Murray knew these representations were false, and they were at the same time actively diverting potential "good risk" members away from INRMA. The pool members claimed RMA and Murray intended for them to rely on the false statements to induce them to renew their memberships in the pool. As a result of relying on the statements and renewing their membership, the pool members alleged they suffered damages.

Generally, an expression of opinion will not support an action for fraud. Peter J. Hartmann Co. v. Capital Bank & Trust Co., 296 Ill. App. 3d 593, 601, 694 N.E.2d 1108, 1115 (1998). Further, "financial projections are considered to be statements of opinion, not fact." Lagen v. Balcor Co., 274 Ill. App. 3d 11, 17, 653 N.E.2d 968, 973 (1995). Statements concerning future intent or conduct are not actionable as fraud. Ault v. C.C. Services, Inc., 232 Ill. App. 3d 269, 271, 597 N.E.2d 720, 722

- 14 -

(1992).

Here, the pool members offered only nonspecific allegations of fraud. The statement that INRMA did not have a cash-flow problem amounts to an opinion, and the statement that money would be set aside concerns future conduct. The statements relied upon by the pool members in their fraudulent-inducement claim amount to nothing more than opinions and predictions about future conduct. Likewise, the pool members' allegations that RMA and Murray engaged in a fraudulent scheme to deceive them as to the true performance and financial condition of the pool neglect to point out the yearly audits were on file for inspection and review. Moreover, the publicly filed financial statements clearly showed the pool was operating with a member deficit and pointed out INRMA's "ability to absorb future variability is based on future assessments of its members." The pool members' allegations fail to set forth a valid claim for fraud, and the trial court did not err in dismissing the claim with prejudice.

D. Civil Conspiracy

The pool members argue the trial court erred in dismissing their civil-conspiracy claim against RMA and Murray pursuant to section 2-615 because they alleged sufficient facts to state a claim. We disagree.

"Civil conspiracy consists of (1) an agreement between two or more persons (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, and (3) some tortious or illegal act by a

party to the agreement in furtherance of the agreement."  Karas v. Strevell, 369 Ill. App. 3d 884, 919, 860 N.E.2d 1163, 1195 (2006).  "Conspiracies are often intentionally 'shrouded in mystery,' which by nature makes it difficult for the plaintiff to allege with complete specificity all of the details of the conspiracy."  Time Savers, Inc. v. LaSalle Bank, N.A., 371 Ill. App. 3d 759, 771, 863 N.E.2d 1156, 1167 (2007), quoting Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 66, 645 N.E.2d 888, 895 (1994).  However, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred."  Fritz v. Johnston, 209 Ill. 2d 302, 318, 807 N.E.2d 461, 471 (2004).

In count IV, the pool members alleged RMA and Murray agreed and conspired with Ernst & Young to prepare inaccurate, untruthful, and deceptive reports for the purpose of misrep-resenting the true financial condition of the pool to maintain the pool in operation so payments to entities owned and/or controlled by Murray, Stover, and their associates could con-tinue.  As a result, the pool members claimed they suffered damages.

The pool members failed to adequately allege a claim of civil conspiracy.  The sole allegation of conspiracy against RMA and Murray is that they agreed and conspired with Ernst & Young to prepare inaccurate, untruthful, and deceptive audit reports.  This allegation is nothing more than a conclusion that a conspir-

acy existed and fails to satisfy the pleading requirements to state a cause of action for civil conspiracy. Moreover, the pool members failed to adequately allege their underlying claim of common-law fraud, and thus their conspiracy claim fails as a matter of law. See Time Savers, 371 Ill. App. 3d at 772, 863 N.E.2d at 1168.

## E. Breach of Contract

The pool members argue the trial court erred in dismissing the breach-of-contract claim against RMA pursuant to section 2-615 of the Procedure Code because they alleged sufficient facts to state a claim. We disagree.

In count V, the pool members alleged RMA entered into a pool-administrator agreement with INRMA with the express intent to benefit the pool members who were third-party beneficiaries of the agreement. The pool members also alleged the agreement indicated RMA would provide certain services to the pool on behalf of INRMA for the benefit of the pool members. The pooling agreement referenced the agreement between INRMA and RMA to provide the described services. The pool members claimed RMA breached its contractual duties under the pool-administrator agreement and by reference under the pooling agreements to administer the pool with good faith and fair dealing toward the pool members.

In its motion to dismiss, RMA argued the pool members lacked standing as third-party beneficiaries to bring their contract claim because the only parties to the pool-administrator

agreement were RMA and INRMA.  Further, the pool members lacked standing because the pool-administrator agreement did not express an intent to benefit the pool members.

> "A person who is not a party to a contract may nevertheless sue based on the contract if that person is directly benefitted by the contract.  [Citation.]  The benefit must be direct to the person asserting third-party beneficiary status; an incidental benefit is not a sufficient basis for the claim.  [Citation.]  A person's status as third-party beneficiary depends upon the intent of the parties to the contract and must be determined on a case-by-case basis.  [Citation.]  Circumstances surrounding the execution of the contract may be considered [citation], but the alleged third-party beneficiary must be expressly named in the contract."  Paukovitz v. Imperial Homes, Inc., 271 Ill. App. 3d 1037, 1039, 649 N.E.2d 473, 475 (1995).

In this case, the pool-administrator agreement does not contain an express declaration identifying the pool members as third-party beneficiaries.  While the agreement makes reference to "members," it is in terms of describing RMA's duties to INRMA in operating the pool as INRMA's agent.  Any benefit to the pool

members is an incidental benefit of the agreement between RMA and INRMA. As the pool members cannot properly claim status as third-party beneficiaries, their breach-of-contract claim fails.

### F. Leave To Amend

The pool members argue the trial court erred in denying leave to amend their third-party complaint against RMA and Murray. We disagree.

"A trial court's denial of a motion for leave to amend a pleading is reviewed under an abuse[-]of[-]discretion standard." County of Cook ex rel. Rifkin v. Bear Stearns & Co., 215 Ill. 2d 466, 474, 831 N.E.2d 563, 568 (2005). To determine whether an abuse of discretion occurred, courts look at four factors, including: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992).

In this case, the pool members asked in the conclusion of their response in opposition to the motion to dismiss for leave to amend their pleading based upon newly acquired information. They also made a similar request at the conclusion of oral argument. The trial court indicated the pool members had received opportunities to amend and any further attempt would be futile.

The pool members did not include a proposed amended complaint with supporting facts in the trial court. The failure to do so "significantly diminishes our ability to determine whether the proposed amendment" would provide them with a viable theory against RMA and Murray. Mendelson v. Ben A. Borenstein & Co., 240 Ill. App. 3d 605, 619, 608 N.E.2d 187, 196 (1992). The failure to tender the proposed amendment forfeits review of the trial court's decision. See Ignarski v. Norbut, 271 Ill. App. 3d 522, 532, 648 N.E.2d 285, 293 (1995); Mendelson, 240 Ill. App. 3d at 619, 608 N.E.2d at 196.

G. Breach of Fiduciary Duty (Trustees)

The pool members argue the trial court erred in dismissing the breach-of-fiduciary-duty claim against the trustees pursuant to section 2-615 because sufficient facts were alleged to state a claim. We disagree.

To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. Neade v. Portes, 193 Ill. 2d 433, 444, 739 N.E.2d 496, 502 (2000). "A fiduciary relationship exists where there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith with due regard to the interests of the other." Schweickart v. Powers, 245 Ill. App. 3d 281, 290, 613 N.E.2d 403, 410 (1993).

> "'A fiduciary or confidential relationship
> exists where, by reason of friendship,

- 20 -

agency, or business association and exper-

ience, trust and confidence are reposed by

one person in another who, as a result, gains

an influence and superiority over him.'"

Maercker Point Villas Condominium Ass'n v.

Szymski, 275 Ill. App. 3d 481, 484, 655

N.E.2d 1192, 1194 (1995), quoting Melish v.

Vogel, 35 Ill. App. 3d 125, 136, 343 N.E.2d

17, 26 (1975).

Regardless of the level of trust between the parties, a fiduciary

relationship requires one party to exert dominance and influence

over the other party.  Lagen, 274 Ill. App. 3d at 21, 653 N.E.2d

at 975.

In count VI, the pool members alleged the trustees owed

a fiduciary duty to INRMA and its members pursuant to the first-

amended trust agreement and as officers of a nonprofit associa-

tion to manage and administer the pool with judgment and care.

The complaint alleged the trustees approved and acquiesced in

fraudulent payments and misrepresentations as to the pool's

financial condition.

Here, the pool members offer only conclusory allega-

tions that the trust agreement creates a fiduciary duty between

them and the trustees.  Count VI merely claimed the trustees had

a duty to act prudently, but the trust-agreement clause cited in

support of the alleged fiduciary duty simply addresses how the

trustees are to be indemnified by INRMA.  The pool members failed

to establish the trustees exerted dominance and influence over them based on the trust agreement.

The pool members' claim of a fiduciary duty based on INRMA's nonprofit status is also insufficient to state a cause of action for breach of fiduciary duty. According to section 107a.05(b) of the Worker's Compensation Pool Law, the "'[t]rustees of a group workers' compensation pool' shall be considered as though they were directors of a domestic mutual insurance company." 215 ILCS 5/107a.05(b) (West 2006). Pooling agreements are considered as policies of insurance. 215 ILCS 5/107a.05(b) (West 2006). It is well settled that an insurer does not owe its insured a fiduciary duty. Nielsen v. United Services Automobile Ass'n, 244 Ill. App. 3d 658, 666, 612 N.E.2d 526, 531 (1993). INRMA is the workers' compensation insurer of the pool members. "Directors owe a fiduciary duty to their corporations and to their shareholders." Stamp v. Touche Ross & Co., 263 Ill. App. 3d 1010, 1015, 636 N.E.2d 616, 620 (1993). The pool members' allegation that INRMA's nonprofit status created a fiduciary relationship with the trustees failed to state a cause of action.

                      III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, P.J., and McCULLOUGH, J., concur.