CHARLES WERCKENTHEIN *et al.*, Plaintiffs-Appellants, v. BUCHER PETROCHEMICAL COMPANY *et al.*, Defendants-Appellees (Ashland Oil Company, Inc., *et al.*, Defendants).

First District (2nd Division) No. 1—92—0097

Opinion filed June 29, 1993.

John P. DeRose & Associates, of Burr Ridge (John P. DeRose, of counsel), for appellants.

John T. Burke & Associates, P.C., of Chicago (John T. Burke, Jr., of counsel), for appellee Bucher Petrochemical Company.

Pope & John, Ltd., of Chicago (David L. Doyle and Karen G. Seimetz, of counsel), for appellees Dow Chemical Company and Shell Oil Company.

Hinshaw & Culbertson, of Chicago (Donald J. O'Meara, Stephen R. Swofford, and Daniel W. McGrath, of counsel), for appellee PPG Industries.

Baker & McKenzie, of Chicago (John M. McGarry, of counsel), for appellee Technical Petroleum, Inc.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Charles Werckenthein (plaintiff) filed this negligence and strict liability action against, among others, defendants Bucher Petroleum Chemical Company; PPG Industries, Inc.; Shell Oil Company; Sun Refining and Marketing Company; Dow Chemical Company; and Techni-

cal Petroleum (collectively, defendants), which supplied chemical products in bulk to his employer.[1] He claimed that he had been injured as a result of their failure to warn him adequately of the dangers arising from his quality control analysis of the chemicals. Plaintiff's wife, Grace, added a count for loss of consortium; she was subsequently declared his guardian. The circuit court granted partial summary judgment for defendants on certain claims as untimely, and it later granted defendants summary judgment on the remaining claims against them. Plaintiff and his wife appeal both orders, asserting that the circuit court incorrectly determined that some claims were time barred and that the circuit court erred in finding that as a matter of law, defendants had no duty to warn against using a particular testing procedure. We affirm.

In his complaint, plaintiff alleged that among his duties as chief chemist for Ashland was a routine company procedure requiring him to sniff, evaluate, and record the odors of the chemicals defendants supplied to his employer. He contended that as a result of the exposure from this procedure, he suffered a number of health problems, including cancers and fibrillation that resulted in a stroke. Although the exposure occurred between February 1969 and March 1983, plaintiff and his wife further alleged that they neither knew nor had reason to know of the causal link between his injuries and defendants' conduct until consultation with medical experts in industrial injuries, which did not occur until April 1986. Plaintiff filed his complaint shortly after this consultation.

Defendants moved for partial summary judgment on statute of limitations grounds. They argued that plaintiff had suffered these cancers more than two years before filing suit and that, as he admitted during his 1989 deposition, plaintiff knew, or should have known through diligent inquiry, that the cancers had been wrongfully caused by the chemicals he encountered in his work. In January 1991, the circuit court granted summary judgment for defendants on the cancer claims but not on the fibrillation/stroke claim. The court determined that long before 1984 plaintiff had been put on notice that he had been wrongfully injured and therefore was remiss in not having investigated the cause prior to 1986. In reaching its ruling, the circuit court struck plaintiff's own affidavit wherever inconsistent with his

---

[1]Plaintiff also sued defendant Ashland Oil Company, the parent corporation of Ashland Chemical Company (Ashland), his employer of 21 years, and four of its supervisory employees in intentional tort, claiming that they permitted him to be overexposed to chemicals they knew were toxic. Those defendants are not party to this appeal.

deposition testimony. Plaintiff moved for reconsideration on the ground that a recent psychiatric examination of plaintiff revealed that he suffered from severe brain damage with impaired memory, so his deposition testimony should have been voided. This motion was denied.

Defendants then moved jointly for summary judgment on the remaining claims against them. They raised five independent grounds: (1) as bulk suppliers, their duty to warn extended only to their purchaser, Ashland, not to plaintiff; (2) Ashland was a sophisticated user and, as such, needed no warning and could be relied upon to warn and protect its employees; (3) even if they did owe plaintiff a duty to warn, he had received the warnings and they were adequate; (4) the dangerous properties of the chemicals were obvious and well known to both Ashland and plaintiff; and (5) even if the warnings were inadequate, their inadequacy was not the cause of plaintiff's injuries. In support of their motion, defendants attached a number of documents, including material safety data sheets (MSDS's) for the chemicals in question and an affidavit from Ashland's director of health and safety since 1978. In that affidavit, Dr. Toeniskoetter stated that his department maintained a library with these sheets and other information on the safe handling of chemicals and that Ashland's policy was to make the MSDS's available to employees. Also attached were portions of depositions from two of plaintiff's former assistants and an article by plaintiff about printing solvents, which stressed the need for ventilation during use. In addition, through discovery, defendants obtained from plaintiff's home library many of the challenged warnings, indicating his awareness of the chemicals' properties.

Plaintiff replied that (1) the bulk supplier and sophisticated user doctrines did not apply in Illinois; (2) whether warnings were given to him and the sufficiency thereof were fact questions precluding summary judgment; and (3) he had presented enough facts to support a reasonable inference that exposure to defendants' chemicals had caused his injuries. In his supporting affidavit, he explained that he or his assistant tested a sample from every bulk delivery during his tenure, that a 55-gallon drum of waste chemicals was kept open at all times in a storeroom adjacent to the lab, that the lab was inadequately ventilated, that he was not given any breathing apparatus, and that he was told that use of a fume hood was generally unnecessary. He commented in his deposition, however, that "we never inhaled over the TLV [threshold limit value] in sniff testing the samples." According to the other attached documents, defendants' representatives never reviewed the lab's procedures for quality con-

trol testing. In addition, an affidavit from plaintiff's assistant challenges Dr. Toeniskoetter's on a number of grounds: the assistant had never seen or heard of Dr. Toeniskoetter or his department; he had never been told of the TLV's of the chemicals he worked with and had not even heard the term "Threshold Limit Value" until he left Ashland; no MSDS's were kept on hand or made accessible to him; and few of Ashland's high-ranking employees had any knowledge of the products at issue, much less of their effects on health. In a 1982 memo, a manager commented that the vapor level in the laboratory had never been measured, commenting that "this might be in order sometime in the future."

At an interim hearing, the court asked for supplemental submissions on the issue of industry custom and practice for testing for odor by briefly inhaling the chemicals directly from an open container (the sniff test). The court wondered whether, if testing in the industry was performed in violation of the warnings given, manufacturers who knew this should have a duty to give express warnings against such testing methods. It then framed the issue for summary judgment as follows: if the industry custom was to test without exceeding TLV's (threshold limit values), the warnings defendants gave were adequate as a matter of law; if not, defendants would have had a duty to warn against the dangerous testing technique because they knew or should have known that quality control staff would misuse the products. The parties complied. Defendants' documents showed that the American Society for Testing and Materials (ASTM) recommended that testing be done by dipping filter paper into the chemical and then smelling the filter paper; plaintiff's expert opined that the only way to test for bulk odor was through direct inhalation, which he described as an "extremely dangerous" test albeit "widely used in industry." He opined that six minutes of this type of testing would be equivalent to six hours of deliberate solvent abuse, such as sniffing paint thinner.

The court granted summary judgment for defendants. The court stated as follows:

> "[T]he issue before me that I really wanted to resolve is whether or not there was a method, a recognized method out there, of doing an odor test that was not unsafe, that people knew about; and it seems to me that there's a standard testing method to do an odor test without engaging in the type of activity that the plaintiff did at the Ashland Chemical Corporation; and therefore because there was a safe method of doing this type of odor test, I don't think that the defendants were

under a duty to warn of Ashland's particular method of doing this test."

The order contains Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) wording.

## I

Despite recent opinions stating that summary judgment is a matter of discretion and is reviewed for abuse thereof,[2] there should be little question about the standard of review for rulings on summary judgment motions under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005):

> "Although the use of summary judgment is encouraged as an aid in expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is free from doubt. [Citation.] 'In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent.' [Citations.] In short, '[a] motion for summary judgment is to be decided on the basis of the record as it exists at the time the motion is heard.' [Citation.]
>
> Furthermore, it is well established that in deciding a motion for summary judgment, the court may draw inferences from the undisputed facts. However, where reasonable persons could draw divergent inferences from the undisputed facts, the issue should be decided by the trier of fact and the motion should be denied. [Citation.] In light of the standard, the trial court does not have any discretion in deciding the matter." (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271-72, 586 N.E.2d 1211, 1215.)

Accordingly, the *de novo* standard of review applies (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 411), and "[t]he trial court's summary judgment may be affirmed on any basis appearing in the record whether or not the court relied on that basis or its reasoning was correct" (*Ray Dancer, Inc. v. The D M C Corp.* (1992), 230 Ill. App. 3d 40, 50, 594 N.E.2d 1344, 1351).

■ As for the quantum of evidence required, if a party without the burden of proof moves for summary judgment, the burdened

---

[2]See *Meyer v. Cohen* (1993), 260 Ill. App. 3d 351, listing such opinions.

party may prevail without satisfying its trial burden of a preponderance of the evidence. (*Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 292-93, 560 N.E.2d 586, 589.) If confronted by supporting affidavits submitted by the unburdened party, however, the burdened party must submit counteraffidavits; it may not rest solely on its allegations in its pleadings to raise an issue of fact that would thwart such a motion. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586, 272 N.E.2d 497, 500-01, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *East Side Fire Protection District v. City of Belleville* (1991), 221 Ill. App. 3d 654, 658, 582 N.E.2d 755, 758 ("Although a plaintiff is not required to prove his case on a defendant's motion for summary judgment, he must provide a factual basis arguably entitling him to judgment").) Thus,

> "where a party moving for summary judgment files supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted. If the opponent fails to controvert the proofs offered in support of the motion and the movant's showing of uncontradicted facts would entitle him to judgment as a matter of law, then summary judgment is proper." (*East Side Fire Protection District,* 221 Ill. App. 3d at 657, 582 N.E.2d at 758.)

Here, plaintiff had the burden on the elements of his case, such as duty, breach, and causation, and defendants had the burden of proof on their affirmative defenses, such as the statute of limitations.

## II

Plaintiff contends that the court erred in finding that he knew or must have known of the causal link between his exposure to the chemicals and his medical complaints because such knowledge is a question of fact, and that his suspicions or beliefs did not amount to "knowledge" under the law. He points out that he has no medical training and, as for chemistry, is self-taught, having had only one year of college. He discounts the importance of his deposition testimony, in which he says he only "assumed" or "believed" that the chemicals caused his cancers, again stressing his incompetence and poor memory at the time of his deposition.

There is little practical difference between the limitations period for the two causes of action in this case. The limitations period for personal injuries is two years from the date on which the cause of action accrued, and the product liability statute states that for claims accruing on or after January 1, 1979, and involving a product that

was in or entered the stream of commerce on or after that date, "[except as otherwise indicated in the statute], the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury." (Ill. Rev. Stat. 1985, ch. 110, pars. 13—202 (negligence), 13—213 (product liability) (now 735 ILCS 5/13—202, 5/13—213 (West 1992)).) In *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864, on which plaintiff relies, the plaintiff first sought treatment for shortness of breath in 1957; the diagnosis was "lung problems." Despite frequent medical treatment, his condition was not diagnosed as asbestosis until 1973. Our supreme court determined that the 1975 complaint was not time barred because, despite plaintiff's knowledge of his respiratory problems since 1957, he had not learned of the connection between those problems and the asbestos until 1973. The court further ruled that whether there was sufficient information prior to 1973 was a fact question for the jury.

■ Here, as in *Nolan*, it cannot be disputed that plaintiff knew of his cancers long before 1984. As the circuit court ruled and plaintiff's argument ignores, however, plaintiff was put on notice long before 1984 that his cancers had been wrongfully caused even though the cause was not actually diagnosed until 1986 and, unlike the plaintiff in *Nolan*, plaintiff has presented no facts showing diligent inquiry prior to 1986 concerning the cause of the cancers. Consequently, the circuit court correctly ruled that defendants were entitled to summary judgment on the cancer claims.

### III

For injuries caused by defective products, a plaintiff may have four theories of recovery available: express warranty, implied warranty, negligence, and strict liability. Negligence, of course, concerns injuries arising from a defendant's breach of the duty of reasonable care (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226); strict liability addresses injuries resulting from a product that was in an unreasonably dangerous condition when it left a defendant's control (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 621-23, 210 N.E.2d 182, 187, citing with approval Restatement (Second) of Torts §402A (1964)). The two theories are not identical, however: strict liability for failure to warn requires evidence of the industry's knowledge of the product's dangerous propensity, and it turns on the nature of the product and the adequacy of the warning; negligence focuses on the particular defendant's knowledge and conduct.

(*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 34-35, 402 N.E.2d 194, 198; see also *Baltus v. Weaver Division of Kidde & Co.* (1990), 199 Ill. App. 3d 821, 829, 557 N.E.2d 580, 585 ("[T]he distinction between claims in strict liability and negligence lies in the fault concept; in strict liability, the focus is on the defective condition of the product, regardless of fault, but in negligence, defendant's fault is additionally in issue").)[3] Plaintiff grounded his complaint in both theories of recovery, alleging that defendants' breach of their duty to warn him against directly sniffing the chemicals while testing them caused his fibrillation and resultant stroke. For the purposes of this appeal, we assume without deciding that defendants had a duty to warn plaintiff as well as Ashland,[4] so we address only whether defendants demonstrated as a matter of law that their warnings were not so inadequate as to render the chemicals "unreasonably dangerous."

■ The purpose of warnings is to reduce the risk of harm. This may be accomplished either by shifting or by reducing the risk of injury. Thus, if warnings are adequate, users proceed at their own risk. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 221, 412 N.E.2d 959, 964.) Examples of inadequate warnings include those that do not specify the risk, are inconsistent with use of the product, provide no reason for the warning, or do not reach the user. (*Palmer*, 82 Ill. 2d at 221, 412 N.E.2d at 964 (giving examples from other jurisdictions).) Adequacy of warnings generally is a question of fact. (*Palmer*, 82 Ill. 2d at 221, 412 N.E.2d at 964.) Accordingly, it is an issue inappropriate for summary judgment unless the movant demonstrates conclusively that there remains no triable question.

■ Here, the circuit court determined that defendants' warnings were adequate as a matter of law, reasoning that "because there was a safe method of doing this type of odor test, *** the defendants were under [no] duty to warn of Ashland's particular method of doing this test." Plaintiff contends that the adequacy of these warnings is a question of fact not suitable for summary judgment and that, in par-

---

[3]Some jurisdictions view these two causes of action as identical for all practical purposes. (Note, *Failures to Warn and the Sophisticated User Defense*, 74 Va. L. Rev. 579, 583; *Forest v. E.I. DuPont de Nemours & Co.* (Nev. 1992), 791 F. Supp. 1460, 1463.) Not so Illinois. *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 210, 384 N.E.2d 368, 372 ("The elements of a cause of action in strict products liability, of course, differ markedly from their counterparts in negligence").

[4]We note that in a similar lawsuit filed by a former co-worker of plaintiff, the circuit court determined that appellants owed the co-worker no duty to warn. That case is now on appeal. *Limanowski v. Ashland Oil Co.*, Nos. 1—91—3325, 1—92—0098.

ticular, the warnings on the MSDS's or on the specifications sheet accompanying each shipment should have included quality control testing instructions, not just general warnings against exceeding TLV's and improper ventilation.

We cannot agree. Defendants' submissions made plain that dire consequences would flow from prolonged or intensive exposure to these products. For example, one document initialed by plaintiff in March 1979 contained the following safety rules for handlers of chlorinated solvents:

> "Always wear protective garments and use safety equipment when exposure to chlorinated solvents cannot be avoided.
> ***
> Do not use solvents in open containers unless ventilation is adequate to draw the vapors away from the work area.
> ***
> Do not tolerate a continuing strong or objectionable solvent odor. It is an indication of excessive vapor in the air."

The document also warned that *"[r]epeated and prolonged (chronic) exposure to organic solvents at or above levels producing beginning anesthetic effects, such as dizziness or light-headedness, should be considered a health hazard."* (Emphasis in original.) In Illinois, manufacturers are entitled to assume that such warnings, if communicated, will be heeded. (*Taylor v. Gerry's Ridgewood, Inc.* (1986), 141 Ill. App. 3d 780, 785, 490 N.E.2d 987, 992 (warnings on revolver were extensive).) Furthermore, the standard testing procedure in the industry, as demonstrated by the ASTM recommendations, was to conduct the tests in a different, safer manner, which plaintiff elected not to follow. As to the alleged lack of warning against plaintiff's injury, the document further states that *"concentrations of chlorinated solvents that produce 'drunkenness' or unconsciousness may sensitize the heart to [certain drugs]. This high exposure may result in cardiac arrythmia, including ventricular fibrillation (a particular and serious kind of irregular heartbeat)."* (Emphasis added.) We also note that plaintiff presented no facts demonstrating that his injuries were caused by defendants' failure to warn him not to inhale the chemicals directly rather than by the chemicals themselves. Indeed, plaintiff himself said during his deposition that "the sniff test was not the problem."

In sum, defendants did not breach their duty, if any, to warn plaintiff, and their product was not unreasonably dangerous because the warnings did not need to include specific cautions against plaintiff's testing procedure to be adequate as a matter of law. Conse-

quently, although adequacy of warnings is generally a fact question reserved for the jury, under the circumstances here the circuit court correctly held that defendants were entitled to summary judgment.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.