FERNANDO LAJATO, Plaintiff-Appellant, v. AT&T, INC., Defendant-Appellee and Third-Party Plaintiff (Quinn Delivery Service, Inc., Third-Party Defendant).

First District (5th Division) No. 1—95—0447

Opinion filed August 9, 1996.

Beerman, Swerdlove, Woloshin, Barezky, Becker, Genin & London, and Harvey L. Walner & Associates, both of Chicago (Alvin R. Becker, Harvey L. Walner, and Christopher A. White, of counsel), for appellant.

William F. DeYoung, Loretto M. Kennedy, and Carole C. Tubbesing, all of Burke, Weaver & Prell, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of court:
This is an action for damages brought by the plaintiff, Fernando

Lajato, arising from injuries he incurred while working as an independent contractor for third-party defendant Quinn Delivery Service, Inc. (Quinn), to move a battery hoist owned by defendant AT&T. AT&T filed a contingent third-party complaint against Quinn, not at issue in this appeal, seeking indemnification pursuant to the delivery service contract between Quinn and AT&T, in the event plaintiff recovered a judgment in his tort action against AT&T. AT&T subsequently filed a motion for summary judgment against plaintiff which the trial court granted. In that order, the court also denied plaintiff's oral motion requesting leave to amend his complaint. Subsequently, plaintiff filed a motion to reconsider, which the court ultimately struck by reason of its alleged lack of jurisdiction to hear it. Plaintiff appeals from the orders granting summary judgment to AT&T, denying his motion to amend his complaint, and refusing to hear his motion to reconsider. AT&T has moved to dismiss this appeal for lack of appellate jurisdiction.

In November 1989, plaintiff filed a complaint against AT&T, wherein he alleged that on July 1, 1988, he was on the premises of AT&T on behalf of Quinn in order to move an AT&T battery hoist. The complaint further alleged that while performing that task, the hoist fell upon him, causing him injuries for which he sought damages. The complaint averred that AT&T was negligent in its failure to maintain, inspect, and repair the battery hoist, and for AT&T's failure to warn plaintiff of the propensity of the hoist to fall. In April 1990, AT&T filed its answer, specifically denying each basis for recovery alleged in plaintiff's complaint. The matter was scheduled for trial in June 1995.

On April 25, 1994, AT&T filed a motion for summary judgment, alleging that, based upon the undisputed facts, it was clear that it owed no duty of care to plaintiff with respect to his injuries. In support of its motion, AT&T submitted excerpts of the deposition testimony of plaintiff and a copy of the delivery services contract between AT&T and Quinn. In his deposition, plaintiff testified that on the date of the accident, July 1, 1988, he was making pickups and deliveries of telephone equipment at various AT&T locations as an independent contractor for Quinn. He stated that he had received instructions from Quinn via radio to go to an AT&T property in Rolling Meadows, Illinois, the scene of the accident, to pick up a battery hoist and to transport it to another AT&T location in Rockford, Illinois. Approximately 99% of plaintiff's delivery work for Quinn involved pickups and deliveries of AT&T equipment. The plaintiff stated that AT&T did not direct him in his moving work, but, rather, allowed him to use his own expertise to determine how each move would be accomplished.

Plaintiff further testified that the battery hoist, which weighs approximately 500 pounds, was used to lift batteries weighing approximately 300 pounds up onto shelves. Plaintiff described the hoist as being rectangular in shape, on wheels, and consisting of a large, black metal frame with a motor and hoist accessories suspended from the top-middle of the frame. The hanging motor and accessories could be pulled to one side of the hoist frame and secured thereto with a nylon strap and a chain, both of which were also attached to the hoist, in order to stabilize the hoist during transport and when not in use to perform its battery-lifting function. It was plaintiff's customary practice to inspect the hoist to ensure that the motor and accessories were firmly secured with the strap and the chain prior to moving the hoist. Plaintiff had moved this particular hoist on at least 10 to 15 different occasions.

Plaintiff's deposition further revealed that when he reached the AT&T Rolling Meadows location, an AT&T employee directed him to the hoist, and that after that brief conversation, plaintiff had no further discussions with anyone, AT&T employees or otherwise, until after the accident. When plaintiff approached the hoist, he observed that its motor and accessories were already strapped and secured to the hoist's frame. He also testified that he personally examined the strap to ensure that the hanging apparatus was firmly secured to the frame of the hoist with the nylon strap and the motor chain before attempting to move the hoist. Plaintiff then wheeled the hoist to the back of his truck and onto his truck's hydraulic lift platform, which he had lowered to ground level in order to lift the hoist into his truck. After raising the lift and the hoist from ground level up to the truck's bed, plaintiff climbed into the truck bed and began to pull the hoist into the bed.

Plaintiff further testified that, while he was pulling the hoist into the truck, the strap around the motor and hoist accessories loosened for reasons beyond his knowledge, permitting the motor and the accessories to swing free and the weight of the hoist to shift towards him. Immediately thereafter, the hoist fell onto plaintiff, causing him various injuries. Plaintiff stated that there were no known witnesses to the accident. He also stated that about two months after the accident, he heard from an AT&T installer that certain fellow laborers at AT&T had told him that, after plaintiff's accident, they would not use that hoist because it was unsafe and that AT&T ultimately shipped the hoist back to the manufacturer.

In addition to plaintiff's deposition testimony, AT&T submitted the Quinn-AT&T delivery contract in support of its motion for summary judgment. That contract reveals that Quinn, through its own

independent contractors, performed moving services for defendant AT&T. The contract required Quinn to

"receive, pick up, load, transport, unload, and deliver telephone equipment and other material (the 'Material'), and perform the other services provided for in this agreement as ordered by [AT&T] from April 1, 1987 to March 31, 1989."

The contract further provided that Quinn or its agents

"shall have the sole and exclusive care, custody and control of the Material from the time it is tendered to [Quinn], [Quinn's] agents or servants, until it is delivered to and accepted by [AT&T]."

In his response to AT&T's motion for summary judgment, plaintiff argued that AT&T had voluntarily assumed and breached a duty to him to keep its premises safe and to maintain the hoist such that it would not do harm to those moving it. In support of his position, plaintiff attached additional excerpts from his own deposition, pointing to his testimony that the AT&T hoist's motor and accessories were already secured to the frame of the hoist by the nylon strap and the motor chain when he arrived at the site to move the hoist. He also referred to his testimony that there was no motor lock securing the motor to the frame and that the motor and accessories would not have swung free after the strap loosened if there had been such a motor lock.

In a hearing on July 27, 1994, the trial court granted AT&T's motion for summary judgment with prejudice. Later at that same hearing, the trial court heard plaintiff's oral request for leave to amend his complaint pursuant to section 2—1005(g) of the Illinois Code of Civil Procedure (735 ILCS 5/2—1005(g) (West 1994)), where plaintiff argued that he should be allowed to amend his complaint to show that AT&T voluntarily undertook to secure the hoist and did so negligently. The court denied plaintiff's motion to amend, stating as its reason that "[i]t's an '89 case."

On August 25, 1994, within 30 days of the July 27 order granting summary judgment and denying leave to amend, plaintiff filed a motion to reconsider. However, plaintiff did not serve AT&T with that motion until September 18, 1994, at which time he transmitted that motion to AT&T via facsimile at AT&T's request. No notice of motion was served upon AT&T until November 9, 1994, and plaintiff did not file a certificate of service for that motion until November 17, 1994.

AT&T subsequently filed a motion objecting to plaintiff's motion to reconsider, arguing that the trial court had no jurisdiction to hear it based on plaintiff's failure to file a proof of service within 30 days of the July 27 order. On January 13, 1995, the trial court sustained

AT&T's objection, finding that it had no jurisdiction to hear plaintiff's motion to reconsider, and therefore did not address the merits of that motion. On January 25, 1995, within 30 days of the trial court's January 13 order, plaintiff filed his notice of appeal, both from that order and from the July 27, 1994, order granting summary judgment and denying plaintiff leave to amend.

Plaintiff contends on appeal that the trial court erred in granting summary judgment because by improperly securing the battery hoist for transport, AT&T negligently performed a voluntary undertaking, and because as a gratuitous bailor, AT&T knew the hoist was dangerous yet failed to inform plaintiff of its dangerous condition. Plaintiff also contends that the trial court abused its discretion in denying him leave to amend his complaint after the grant of summary judgment.

I. JURISDICTION

Before reaching plaintiff's contentions on appeal, we must first address defendant's motion to dismiss this appeal for want of appellate jurisdiction. *Bell Federal Savings & Loan Ass'n v. Bank of Ravenswood*, 203 Ill. App. 3d 219, 560 N.E.2d 1156 (1990). In its motion to dismiss, AT&T contends that plaintiff's failure to file a proof of service with its August 25, 1994, motion to reconsider prevents this court from reviewing either of the trial court's July 27 or January 13 orders. Defendant argues, somewhat obliquely, that plaintiff's motion to reconsider should not be considered as being timely filed, because it was not accompanied by a proof of service, and as a result, the trial court was correct in stating that it had no jurisdiction to consider it. Consequently, defendant would urge that the motion to reconsider did not have the effect of extending the time for filing plaintiff's notice of appeal beyond the initial 30-day period following entry of the summary judgment order. See 155 Ill. 2d R. 303(a)(1) (discussed more fully below). We disagree.

■ Under Supreme Court Rule 303(a)(1), a notice of appeal must be filed within 30 days after the entry of the final judgment from which the appeal is taken, or, if a timely post-trial motion directed at the judgment is filed, within 30 days after entry of the order disposing of the last pending post-trial motion. 134 Ill. 2d R. 303(a)(1). Under section 2—1203 of the Illinois Code of Civil Procedure, a post-trial motion must be filed within 30 days of a final judgment. 735 ILCS 5/2—1203 (West 1994). Otherwise, the trial court will lose jurisdiction to modify or vacate the final order which it entered after the lapse of 30 days. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 470 N.E.2d 290 (1984); *In re Application of the County Treasurer*

*& Ex-Officio County Collector of Cook County for Judgment & Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for 1984*, 208 Ill. App. 3d 561, 567 N.E.2d 486 (1990). A motion to reconsider is a post-trial motion (*Elmhurst Auto Parts, Inc. v. Fencl-Tufo Chevrolet, Inc.*, 235 Ill. App. 3d 88, 600 N.E.2d 1229 (1992)) and, therefore, "falls within the purview of post-judgment motions which must be filed within 30 days after the challenged judgment is entered." *Sho-Deen, Inc. v. Michel*, 263 Ill. App. 3d 288, 290, 635 N.E.2d 1068, 1071 (1994). Only if a post-trial motion is timely filed pursuant to section 2—1203 will it extend the time for filing the notice of appeal under Rule 303(a). *In re Application of County Treasurer*, 208 Ill. App. 3d 561, 567 N.E.2d 486.

Thus, the question as to whether the appellant's notice of appeal was filed beyond the 30-day period allowed under Rule 303(a), thereby depriving this court of its jurisdiction, depends upon whether the failure to file a certificate of service vitiated the filing of the plaintiff's motion to reconsider. If we determine that the filing of plaintiff's motion to reconsider on August 25 within 30 days after the July 27 summary judgment order was timely, notwithstanding the failure to file an accompanying certificate of service within that 30-day period, then plaintiff's notice of appeal from both the July 27 and the January 13 orders was timely. This would follow under Rule 303(a), since the notice of appeal was filed on January 25, within 30 days after the trial court's disposition on January 13 of plaintiff's motion to reconsider. On the other hand, if the trial court was correct in its determination that under section 2—1203, the timely filing of a certificate of service is jurisdictional, without which the motion to reconsider cannot be deemed to have been timely filed, then the notice of appeal in this case, filed more than three months after the entry of the summary judgment order, would be untimely pursuant to Rule 303(a) and leave this court without appellate jurisdiction.

 The rule is clear that the absence of a certificate of service will not vitiate the filing of a motion to reconsider. This matter has been specifically preempted by Illinois Supreme Court Rule 104 (134 Ill. 2d R. 104), which provides, at parts (b) and (d), as follows:

"(b) Filing of Papers and Proof of Service. Pleadings subsequent to the complaint, written motions, and other papers required to be filed shall be filed with the clerk with a certificate of counsel or other proof that copies have been served on all parties who have appeared ***.
***

(d) Failure to deliver or serve copies as required by this rule *does not in any way impair the jurisdiction of the court* over the

person of any party, but the aggrieved party may obtain a copy from the clerk and the court shall order the offending party to reimburse the aggrieved party for the expense thereof." (Emphasis added.) 134 Ill. 2d Rs. 104(b), (d).

Thus, under Rule 104(d), the failure to deliver or serve copies does not impair the jurisdiction of the court. This rule has been applied to post-trial motions in *In re Marriage of Collins*, 154 Ill. App. 3d 655, 506 N.E.2d 1000 (1987), and in *Kollath v. Chicago Title & Trust Co.*, 24 Ill. App. 3d 353, 321 N.E.2d 344 (1974), which held that the failure to include proof of service with a post-trial motion will not invalidate the motion or render it untimely.

Defendant contends that Rule 104(d) only addresses the failure to actually serve copies of the motion but does not address the failure to file a certificate of service. This contention is devoid of any rationale since a failure to serve will preclude the filing of a certificate, unless the movant seeks to perjure himself. Thus, if the failure to actually serve notice does not impair jurisdiction, then *a fortiori*, the failure to file a certificate of service will not impair the validity or timeliness of the motion. See *In re Marriage of Collins*, 154 Ill. App. 3d 655, 506 N.E.2d 1000.

Defendant's reliance on *Vlahakis v. Parker*, 3 Ill. App. 3d 126, 278 N.E.2d 523 (1971) (abstract of op.), and *Ingrassia v. Ingrassia*, 156 Ill. App. 3d 483, 509 N.E.2d 729 (1987), is misplaced. Although *Vlahakis* reached a contrary result, it is clear that that opinion did not purport to in any way consider or confront the impact of Rule 104(d) in its determination. That opinion has therefore been distinguished and rejected on that basis in *Kollath v. Chicago Title & Trust Co.*, 24 Ill. App. 3d at 357-58, 321 N.E.2d at 348 ("Rule 104(d) renders a failure to comply with Rule 104(b) *** non-jurisdictional. [Citations.] *** The only cases decided since enactment of [R]ule 104(d) which reached a contrary result[, including *Vlahakis v. Parker*,] did not consider that provision at all"). Likewise, the opinion in *Ingrassia* does not purport to consider Rule 104(d) in its determination. Moreover, *Ingrassia* does not purport to deal with the validity or timeliness of the filing of a post-trial motion, but, rather, with the sufficiency of the notice of that motion when given to the opposing party only a few hours before the hearing on the motion. Hence, *Ingrassia* is not in point, since here there is no question that defendant had actual knowledge of the pendency of plaintiff's motion to reconsider well in advance of the scheduled hearing date on that motion.

Consequently, plaintiff's August 25 motion to reconsider, and therefore his January 25 notice of appeal, were seasonably filed, notwithstanding that no certificate of service was filed until long af-

ter 30 days had passed, since summary judgment was entered on July 27. Since the August 25 motion was timely, the notice of appeal filed on January 25 complied with Rule 303(a), since it was filed within 30 days after the trial court disposed of the motion to reconsider, albeit on jurisdictional grounds, on January 13. Accordingly, our jurisdiction to review both the July 27 and January 13 orders of the trial court remains unimpaired.

▪ Defendant next would urge that if we determine that the January 13 order is reviewable, we should confine our review solely to the correctness of the trial court's denial of its jurisdiction over the motion to reconsider. Defendant contends that if we find that the trial court's jurisdictional determination was erroneous, we should remand the matter to the trial court to allow the trial court to first consider the merit of that motion. We disagree for the same reasons as articulated in *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 587 N.E.2d 494 (1992). There, the court stated as follows:

> "Defendant initially urges us, without citation to authority, to remand this matter to the circuit court because that court did not address the merits of plaintiff's motion. This argument betrays a misperception of the nature both of the question presented and of our review. As noted above, we consider summary judgment orders *de novo*; we, like the circuit court, must decide only whether the parties' pleadings and other submissions present an issue of triable fact and if not, whether plaintiff is entitled to judgment as a matter of law. This is a question of law, not of fact." *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 76, 587 N.E.2d 494, 500 (1992).

Here, too, the grant of summary judgment is subject to *de novo* review, requiring our *de novo* determination whether the submissions of the parties presented triable issues of fact and, if not, whether defendant was entitled to a judgment as a matter of law. Thus, here, as in *Myers*, we may consider this appeal on its merits without the necessity of a remand.

## II. MERITS

As noted earlier, plaintiff contends on appeal that the trial court erred in granting summary judgment because the facts are sufficient to create an inference that AT&T voluntarily assumed a duty to properly secure the battery hoist for transport, a duty which was breached as a result of AT&T's negligence. Additionally, plaintiff contends, for the first time on appeal, that there was error in granting summary judgment because the facts are sufficient to create an inference that, as a gratuitous bailor, AT&T knew the hoist was

dangerous yet failed to inform plaintiff of its dangerous condition. Plaintiff also contends that even if summary judgment was properly entered in favor of AT&T under the issues framed by the existing complaint, the trial court abused its discretion in denying him leave to amend his complaint pursuant to section 2—1005(g) of the Illinois Code of Civil Procedure (735 ILCS 5/2—1005(g) (West 1994)).[1]

We first address plaintiff's contention that the trial court erred in entering summary judgment pursuant to the issues framed by the existing complaint. Summary judgment is proper when the pleadings, depositions and affidavits on file, construed in the light most favorable to the nonmoving party, establish that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. See generally 735 ILCS 5/2—1005 (West 1994); *First State Insurance Co. v. Montgomery Ward & Co.*, 267 Ill. App. 3d 851, 642 N.E.2d 715 (1994); *Torres v. City of Chicago*, 261 Ill. App. 3d 499, 632 N.E.2d 54 (1994); *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 599 N.E.2d 1183 (1992). Appellate review of an order granting summary judgment is *de novo. E.g., Hesselink v. R.L. Perlow Corp.*, 265 Ill. App. 3d 473, 637 N.E.2d 575 (1994); *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 635 N.E.2d 564 (1994). To withstand a motion for summary judgment in an action based in negligence, a plaintiff must allege facts sufficient to show that the defendant owed him a duty, that defendant breached that duty, and that his injury proximately resulted from that breach. See *DiBenedetto v. Flora Township*, 153 Ill. 2d 66, 605 N.E.2d 571 (1992); *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 566 N.E.2d 1365 (1991).

■ With respect to plaintiff's contention concerning AT&T's duty arising from its purported voluntary undertaking, section 323 of the Restatement (Second) of Torts provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to

---

[1]As previously noted, at the trial level, plaintiff urged liability both on the basis of premises liability and the law governing voluntary undertakings. Plaintiff has conceded on appeal that he cannot base his action against AT&T upon a theory of premises liability as a matter of law, due to the holding in *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 913, 629 N.E.2d 569, 575 (1994), insofar as he incurred his injuries in the bed of his truck and not due to any condition of AT&T's premises. See also *Jackson v. Hilton Hotels Corp.*, 277 Ill. App. 3d 457, 660 N.E.2d 222 (1995) (in action based on premises liability, no duty to plaintiff existed where plaintiff failed to show that his injuries were caused by any condition of the premises).

the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323, at 135 (1965). See generally *Cross v. Wells Fargo Alarm Services*, 82 Ill. 2d 313, 412 N.E.2d 472 (1980); *Jackson v. Hilton Hotels Corp.*, 277 Ill. App. 3d 457, 660 N.E.2d 222 (1995). Whether a duty has been voluntarily undertaken is a question of law to be determined by the court. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 582 N.E.2d 108 (1991); *Jackson v. Hilton Hotels Corp.*, 277 Ill. App. 3d 457, 660 N.E.2d 222.

■ In the instant case, plaintiff has failed to allege facts sufficient to establish in the first instance that defendant voluntarily assumed or undertook any duty to properly maintain and secure the battery hoist for transport. First, it is undisputed that AT&T had neither control nor influence over the manner in which plaintiff, an independent contractor retained by Quinn (which was also an independent contractor), readied or moved the hoist and that plaintiff had total discretion in preparing and moving the hoist. Moreover, plaintiff did not submit any evidence that AT&T strapped the motor to the hoist, nor any evidence regarding whether the strapping was undertaken as protection for the plaintiff. Lastly, and more overridingly, even if we were to presume that the strapping was effected by AT&T, there is no evidence whatsoever submitted by plaintiff that he relied upon the safety of that strapping. In fact, the record is clear that plaintiff himself checked the strapping of the motor to ensure it was fastened securely prior to moving the hoist, as was his customary practice when moving that particular hoist.

■ Plaintiff urges that even if there is no basis for liability under a theory of voluntary undertaking, there is a basis established for liability under a theory of gratuitous bailment. In that regard, he contends that there is a genuine issue of material fact that AT&T, as a gratuitous bailor of the hoist, breached a duty to plaintiff to provide a safe hoist or to warn plaintiff of its dangers. We first note that contentions not raised in the trial court are waived on appeal, even in a summary judgment case. *Witek v. Leisure Technology Midwest, Inc.*, 39 Ill. App. 3d 637, 640, 350 N.E.2d 242, 245 (1976) ("This rule of waiver applies even in a summary judgment case"); *Wilson v. Gorski's Food Fair*, 196 Ill. App. 3d 612, 554 N.E.2d 412 (1990). However, even if the argument were preserved, we note that there was no evidence presented that AT&T breached a duty to plaintiff as a gratuitous bailor of the hoist.

"[A] gratuitous bailor may be liable for physical harm caused by the use of his chattel when he knows or has reason to know that the chattel is or is likely to be dangerous when put to the use for which it is supplied; has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and fails to exercise reasonable care to inform the user of its dangerous condition or of the facts which make it likely to be dangerous." *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 913, 629 N.E.2d 569, 575 (1994).

Plaintiff has not produced evidence as to any specific defect either in the design or manufacture of the hoist itself that would indicate that AT&T had actual or constructive knowledge that the hoist was unsafe when it was handed over to plaintiff. Plaintiff himself did not testify as to the condition of the hoist except to say that the strap loosened. The only other evidence that plaintiff has presented consists of unsubstantiated hearsay statements. In that regard, plaintiff testified in his deposition to a conversation that took place after the accident with an AT&T installer who told plaintiff that certain other fellow employees had stated that after plaintiff's accident they refused to use the hoist because it was unsafe and that AT&T ultimately returned the hoist to its manufacturer. However, plaintiff was unable to identify those other AT&T employees, and he did not provide any further detail regarding the specific contents of their statements. Such unsubstantiated hearsay statements cannot be considered in a ruling on a motion for summary judgment. See *Certified Mechanical Contractors, Inc. v. Wight & Co.*, 162 Ill. App. 3d 391, 515 N.E.2d 1047 (1987) (in deciding a motion for summary judgment, court should ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence under the rules of evidence); *Seefeldt v. Millikin National Bank*, 154 Ill. App. 3d 715, 506 N.E.2d 1052 (1987) (although a complaint may purport to raise an issue of material fact, summary judgment is appropriate if such issue is not further supported by evidentiary facts, and in determining the genuineness of a fact, a court should ignore personal conclusions and opinions and consider only admissible facts).

Plaintiff's reliance on *Pagano* is not well taken. There, the court on appeal did find an issue of fact as to whether a defective dolly supplied by the defendant to help move certain barrel drums of ink rendered the defendant liable under a theory of gratuitous bailment. However, in that case, plaintiff gave direct testimony as to specific, observable defects in the dolly which, if believed, would establish that the dolly was defective. Here, aside from the inadmissible hearsay rumors that were reported, the plaintiff himself presented

no evidence to show either a defect in the hoist or that AT&T knew or should have known of any dangerous propensities in the hoist. Consequently, the evidence presented here was not effective to support a counterinference for purposes of summary judgment.

■ Plaintiff next contends that the trial court erred in its refusal in its July 27 order to allow him leave to amend his complaint to more specifically allege facts that there was a voluntary undertaking and that it was implemented negligently. We disagree.

Section 2—1005(g) of the Illinois Code of Civil Procedure (735 ILCS 5/2—1005(g) (West 1994)) provides as follows:

> "(g) Amendment of pleading. Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms."

The allowance of an amendment to the pleadings is in the trial court's discretion, and reversible error can only be found if there is a manifest abuse of discretion. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992). See also *Misselhorn v. Doyle*, 257 Ill. App. 3d 983, 629 N.E.2d 189 (1994); *Eyman v. McDonough District Hospital*, 245 Ill. App. 3d 394, 613 N.E.2d 819 (1993).

As noted, on July 27, immediately after the trial court entered summary judgment against him, plaintiff made an oral motion to amend his complaint, as follows:

> "MR. JOHNSON [Plaintiff's attorney]: I'll set it out to specifics that they undertook the duty to secure the hoist and they negligently performed that duty and as a result Plaintiff was injured based upon the *Nelson v. Pippen, Phillips* [sic] case, that one undertakes a duty to do something, they do so negligently, and someone is injured, they are absolutely liable.
>
> * * *
>
> If the fact that the Court feels that the premises liability count cannot stand does not mean then that a negligent voluntarily [sic] undertaking is not proper here. There will be no new deps. That's what the evidence is through the Plaintiff's deposition."

The court denied plaintiff's motion to amend, stating that "[i]t's an '89 case. I'll deny the motion [to amend]."

We first note that plaintiff never made the proposed amended complaint a part of the record on appeal, except for his oral proposal before the trial judge which, without any offers of new evidence, essentially duplicates the voluntary undertaking theory which has already been argued and rejected. Plaintiff's failure to include the proposed amendment and supporting facts therefor in the record could be found to constitute a waiver in this court of his right to have

the denial of his request for leave to amend reviewed. See *Mendelson v. Ben A. Borenstein & Co.*, 240 Ill. App. 3d 605, 608 N.E.2d 187 (1992) (plaintiff's failure to tender amended complaint or to include it in the appellate record diminished the appellate court's ability to determine whether the proposed amendment would provide a viable theory against defendant and constituted waiver of right to a review of the denial of his request for leave to amend). See also *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 648 N.E.2d 285 (1995) (no abuse of discretion in denying motion for leave to amend complaint where movant orally moved to amend yet failed to submit proposed amendment to trial court).

Notwithstanding waiver, even if we were to review the amendment that plaintiff orally proposed, we would find no abuse of discretion by the trial court in denying plaintiff leave to amend. As already discussed, there was ample evidence before the trial court to support its conclusion that the facts in this case as revealed in the summary judgment submissions would not permit a pleading which could allege a valid cause of action. Moreover, by the same token, even if the complaint were amended to more specifically allege a voluntary undertaking as requested by the plaintiff, the allegations of the complaint would be superseded by the extrinsic facts already submitted, which, as noted, would militate for summary judgment. See *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill. App. 3d 282, 618 N.E.2d 902 (1993) (where allegations in nonmovant's complaint are contravened by movant's extrinsic submissions in summary judgment proceedings, extrinsic submissions control); *East Side Fire Protection District v. City of Belleville*, 221 Ill. App. 3d 654, 582 N.E.2d 755 (1991) (nonmovant must controvert proofs offered by movant in support of motion for summary judgment and cannot merely rest on pleadings); *Seefeldt v. Millikin National Bank*, 154 Ill. App. 3d 715, 506 N.E.2d 1052. The issue here is not simply that plaintiff's complaint is deficient in its framing of the issues, but that, as discussed, the testimony and evidence presented in support of his negligent voluntary undertaking theory are deficient and fall short of establishing a genuine issue of material fact such that judgment should not be entered as a matter of law on that theory of action.

Plaintiff's reliance on *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992), is not well taken. In *Loyola*, the court on appeal set forth four factors to determine whether the trial court had abused its discretion in denying a section 2—1005(g) amendment, including whether the proposed amendment would cure the defective pleading, whether it would cause prejudice or surprise to other parties, whether it was timely, and whether previous opportunities to amend the pleading could be identified.

Applying these factors in order, in the instant case the question of whether plaintiff's proposed amendment would cure the defective pleading is not relevant, because, as already discussed, AT&T succeeded in its motion for summary judgment, not because plaintiff's complaint was improperly pleaded, but because the evidence presented at summary judgment shows no genuine issue of material fact regarding the allegations in the complaint. *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill. App. 3d 282, 618 N.E.2d 902; *East Side Fire Protection District v. City of Belleville*, 221 Ill. App. 3d 654, 582 N.E.2d 755. Taking the second and third *Loyola* factors together (whether there would be prejudice or surprise to AT&T and whether the proposed amendment was timely), the record is ample to support the trial court's determination that the allowance of an amendment would in fact be prejudicial to AT&T, insofar as the amendment was being sought on the eve of trial, five years after the inception of this lawsuit, with no explanation from plaintiff as to why he never before attempted to develop the facts that would be necessary to withstand AT&T's motion for summary judgment. See *Mendelson v. Ben A. Borenstein & Co.*, 240 Ill. App. 3d 605, 608 N.E.2d 187 (no abuse of discretion in denying leave to amend following grant of summary judgment where proposed amendment was sought beyond the pleading stages). See also *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 648 N.E.2d 285.

The final *Loyola* factor is whether plaintiff had sufficient prior opportunities to amend. To that extent, we note that plaintiff indeed had substantial opportunities to amend. Although plaintiff complains that AT&T never gave him notice of any deficiency in his complaint that would require amendment because AT&T never filed a motion to dismiss prior to filing its motion for summary judgment, it is axiomatic that a party can amend its pleading on its own motion. See 3 R. Michael, Illinois Practice, ch. 26, at 446 (1989). The case of *Evans v. United Bank of Illinois, N.A.*, 226 Ill. App. 3d 526, 589 N.E.2d 933 (1992), upon which plaintiff relies, does give credence to plaintiff's contention under the fourth *Loyola* factor that the failure of AT&T to challenge his pleadings prior to its motion for summary judgment deprived plaintiff of any prior opportunity to amend. However, we note that in *Evans* the court on appeal did not rely on that factor alone in finding that the trial court abused its discretion in denying the plaintiff in that case leave to amend, but found that *all* of the *Loyola* factors supported that plaintiff's motion for leave to amend.

In any event, even if plaintiff were correct in his reliance upon *Evans*, we need not consider its application here. As already discussed, the issue here is not whether the allegations of the com-

plaint were sufficient to state a cause of action based upon a voluntary undertaking theory, but whether the facts adduced were sufficient to create an inference to support such allegations. See *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill. App. 3d 282, 618 N.E.2d 902; *East Side Fire Protection District v. City of Belleville*, 221 Ill. App. 3d 654, 582 N.E.2d 755. As previously noted, the facts submitted here are insufficient to raise such an inference. Hence, we find that the trial court's denial of the motion to amend was not an abuse of discretion. See *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 595 N.E.2d 1223 (1992) (where a cause of action cannot be stated even after amendment, leave to amend should be denied).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and HOURIHANE, J., concur.